UNITED STATES of America, Plaintiff,

v.

Everett Edward SPIVEY, Defendant.

Criminal No. 95–0491 LH.

United States District Court,
D. New Mexico.

March 12, 1997.

**1526**

Elizabeth M. Martinez, U.S. Attorney's Office, Albuquerque, NM, for Petitioner.

Billy R. Blackburn, Paul J. Kennedy, Albuquerque, NM, for Defendant.

## MEMORANDUM OPINION AND ORDER

HANSEN, District Judge.

**THIS MATTER** comes before the Court on three motions filed by Defendant Spivey on November 18, 1996: Motion To Dismiss Notice of Intent to Seek the Death Penalty (Docket No. 969); Motion To Strike Statutory Aggravating Factors From Government's Notice of Intent to Seek the Death Penalty (Docket No. 966); and Motion To Strike Non-statutory Aggravating Factors From Notice of Intent To Seek the Death Penalty (Docket No. 965). Having considered the parties' memoranda and argument and the applicable law, the Court finds that the motions are not well taken and they will be **denied.**

### A. Background

Among other offenses, Defendant Spivey was indicted for intentionally killing or intentionally causing the death of another while he was engaged in a continuing criminal enterprise (CCE), in violation of 21 U.S.C. § 848(e)(1)(A). A person convicted under § 848(e) is potentially subject to the death penalty, providing the Government furnishes the defendant with notice of its intention to seek the death penalty and with notice of the aggravating factors the Government contends would warrant imposition of the death penalty.

Following conviction under § 848(e), at the penalty trial the jury hears "information" regarding aggravating and mitigating factors. The rules of evidence do not apply, except that the court may exclude information "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading the jury." 21 U.S.C. § 848(j). If the jury unanimously finds, beyond a reasonable doubt, the existence of one of the aggravating factors under § 848(n)(1),[1] the jury may then consider other statutory aggravating factors.[2] If the jury unanimously finds, beyond a reasonable doubt, an additional statutory aggravating factor, it may also consider and find other, non-statutory, aggravating factors.

If the jury does not find the existence of an (n)(1) factor, the death penalty cannot be imposed. If the jury finds the existence of an (n)(1) factor, but does not find the existence of an additional statutory aggravating factor from § 848(n)(2)-(12), the death penalty cannot be imposed. If the jury finds an (n)(1) factor and an additional statutory aggravating factor, then it must consider whether these factors, together with any non-statutory aggravating factors, outweigh any mitigating factors found to exist. Mitigating factors may be established by a preponderance of the evidence. Only one juror need find the existence of a mitigating factor. If no juror finds the existence of any mitigating factors, the jury must consider whether the aggravating factors are sufficient to justify imposition of the death penalty. The jury's recommendation of the death penalty must be unanimous. If even one juror does

---

1. Factors under § 848(n)(1) include intentional killing, intentional infliction of serious bodily injury resulting in death, intentional conduct intending infliction of lethal force or the victim's death, or intentional conduct which the defendant knew would create a grave risk of death and which resulted in the victim's death.

2. Other statutory aggravating factors include those relied on in the present case: the defendant "committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value;" and the defendant "committed the offense after substantial planning and premeditation." 21 U.S.C. § 848(n)(7) and (8).

not vote in favor of the death penalty, the court must impose a lesser sentence.

### B. Analysis

#### 1. Cruel and unusual punishment

■ Mr. Spivey argues that the death penalty is, under all circumstances, cruel and unusual punishment prohibited by the Eighth Amendment. He cites no authority in support of this contention but instead relies on moral arguments. Although morals necessarily serve as the wellspring of law, "in a democratic society, legislatures, not courts, are constituted to respond to the will and consequently the moral values of the people." *Furman v. Georgia,* 408 U.S. 238, 383, 92 S.Ct. 2726, 2800–01, 33 L.Ed.2d 346 (1972) (Burger, C.J., dissenting). Congress has enacted § 848, which permits imposition of the death penalty under certain circumstances, and its law must be presumed valid. *See Gregg v. Georgia,* 428 U.S. 153, 175, 96 S.Ct. 2909, 2926, 49 L.Ed.2d 859 (1976) (opinion of Stewart, Powell and Stevens, JJ.). Moreover, the Supreme Court rejected Mr Spivey's argument in *Gregg and McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). This Court is compelled to follow controlling precedent.

#### 2. Fifth Amendment indictment clause

■ Defendant Spivey argues that § 848 violates the indictment clause of the Fifth Amendment and Federal Rule of Criminal Procedure 7(a) because it permits the Government merely to give notice of the aggravating factors it intends to prove in support of the death penalty rather than requiring a grand jury to charge those factors by way of indictment. Mr. Spivey contends that the aggravating factors set forth at § 848(n)(1) are in fact elements of the capital offense which must be charged by indictment, and which are necessary prerequisite findings to the jury's consideration of capital punishment. Therefore, the argument continues, the Government's notice containing the (n)(1) factors is in the nature of an impermissible information.

The Government responds that the definition of the offense in § 848(e), rather than the (n)(1) aggravating factors, contains the findings which are a necessary prerequisite to the jury's consideration of the death penalty as potential punishment. The indictment in this case charged the elements of § 848(e). (Second Super. Indictment ¶ 43). Thus, the Government contends that the (n)(1) aggravating factors are sentencing facts rather than elements of the charged offense, and that sentencing facts need not be included in an indictment.

The Fifth Amendment provides that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury," except in certain inapplicable instances. Federal Rule of Criminal Procedure 7(a) states: "An offense which may be punished by death shall be prosecuted by indictment." The Supreme Court interpreted these legal principles in *Smith v. United States,* 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959), upon which Mr. Spivey relies heavily. However, Mr. Spivey misinterprets *Smith.*

In *Smith,* decided before *Furman,* the defendant was rushed through a post-arrest debriefing by a government agent and brought before a judge. The defendant waived indictment and immediately pleaded guilty to an information charging him with kidnaping. The judge sentenced him to 20 years. However, because the kidnaping statute permitted a death sentence under certain circumstances, even though the circumstances were not applicable to defendant Smith, the Supreme Court held that the charge must be prosecuted by indictment pursuant to the Fifth Amendment and Rule 7(a).

Mr. Spivey argues that because *Smith* was decided before *Furman,* its holding must be extended consistent with post-*Furman* case law, such that the aggravating factors underlying the death penalty also must be prosecuted by indictment. In other words, before *Furman,* a jury could, under some statutes, impose the death penalty upon the bare conviction of an offense, without being required to consider aggravating and mitigating circumstances. Since *Furman,* additional facts or aggravating factors beyond conviction of the offense must be established to justify

imposition of capital punishment. *Sumner v. Shuman*, 483 U.S. 66, 107 S.Ct. 2716, 97 L.Ed.2d 56 (1987). From this, Spivey extrapolates a requirement that these sentencing factors must be included in the indictment in order to satisfy the Fifth Amendment and Rule 7(a).

■ The Court is not persuaded. Section 848 satisfies the Fifth Amendment, Rule 7(a), and post-*Furman* jurisprudence, and the aggravating factors need not be charged by indictment. The purpose of the Fifth Amendment indictment clause is to provide "a substantial safeguard against oppressive and arbitrary proceedings" and to prevent "summary treatment [of] those accused of one of our most serious crimes." *Smith*, 360 U.S. at 9, 79 S.Ct. at 997. Thus, even if capital punishment is available but not sought, as was the case in *Smith*, the underlying offense must be prosecuted by indictment. In the present case, even if Mr. Spivey were charged with the intentional killing of another while engaging in a CCE but the Government did not intend to seek the death penalty, the charged crime would have to be prosecuted by indictment.

*Furman* and its progeny did not extend *Smith*'s holding to require that capital aggravating circumstances must also be charged by indictment. The evil *Furman* sought to eradicate was the type of statute that mandated the death penalty upon the bare conviction of an offense, without consideration of individual mitigating and aggravating factors. *See Sumner*, 483 U.S. at 78, 107 S.Ct. at 2723–24. Here, even if the defendant is convicted of intentionally killing while engaged in a CCE, capital punishment is only one possible penalty, and it cannot be imposed unless the jury has considered all relevant information in mitigation and has found beyond a reasonable doubt two aggravating factors. 21 U.S.C. § 848(c). Therefore, the statute does not suffer from the infirmity condemned in *Furman*.

Also unpersuasive is Mr. Spivey's argument that the aggravating factors constitute elements of the offense that must be charged by indictment. The elements of the offense are set forth in § 848(e)(1)(A)—the defendant must intentionally kill or cause intentional killing while the defendant is engaged in or working in furtherance of a CCE. Pursuant to the Fifth Amendment and Rule 7(a), each of these elements must be prosecuted by indictment. Only if the evidence establishes each of these elements is the defendant potentially subject to capital punishment.

■ The factors listed at § 848(n) are simply sentencing factors or aggravators which need not be charged by indictment. As the Supreme Court noted in *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), "Aggravating circumstances are not separate penalties or offenses but are 'standards to guide the making of [the] choice' between the alternative verdicts of death and life imprisonment." *Id.*, at 648, 110 S.Ct. at 3054 (quoting *Poland v. Arizona*, 476 U.S. 147, 156, 106 S.Ct. 1749, 1755, 90 L.Ed.2d 123 (1986)). Moreover, the full range of due process protections applicable to the determination of guilt or innocence, such as the requirement for indictment, are not mandated at the sentencing phase. *Buckley v. Butler*, 825 F.2d 895, 902–03 (5th Cir.1987).

The indictment in the present case meets constitutional requirements because it contains the elements of the charged offense as defined by § 848(e)(1)(A), it "fairly informs the defendant of the charge against which he must defend," and it protects him from the risk of double jeopardy. *Hamling v. United States*, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974) (citation omitted). Mr. Spivey has made no persuasive argument that sentencing factors must also be charged in the indictment.

### 3. Sentencing by a jury against the defendant's will

■ Mr. Spivey argues that § 848 is unconstitutional because it permits a defendant to waive a jury at the penalty phase only if the Government gives its consent. *See* 21 U.S.C. § 848(i)(1)(C) (The penalty hearing shall be conducted "before the court alone, upon the motion of the defendant and with the approval of the Government.") By giving the Government the final decision as to whether sentencing is done by judge or jury, Mr. Spivey claims the statute in effect per-

mits forum shopping by the prosecution. Mr. Spivey asserts, for example, that a defendant may wish to waive a jury at sentencing due to racial concerns, to avoid prejudice in a sensational case, or because of the peremptory challenges exercised by the Government. Mr. Spivey contends that because it is the defendant who faces the potential of death, the defendant, not the Government, should decide whether the court or the jury will make the penalty determination.

Mr. Spivey's arguments rest on hypothetical circumstances not present in this case. He has not indicated that he wishes to waive a jury at the sentencing phase, and he has not articulated any prejudice that may result if a jury makes the sentencing determination. Moreover, case law does not support Mr. Spivey's contentions.

In *Singer v. United States,* 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965), the court construed Federal Rule of Criminal Procedure 23(a), the provisions of which are similar to § 848(i)(1)(C), and held that a criminal defendant does not have an unfettered right to waive a jury and demand a bench trial. "The ability to waive a constitutional right does not ordinarily carry with it the right to insist upon the opposite of that right." *Id.* at 34–35, 85 S.Ct. at 790. The court found that Rule 23(a) creates "no constitutional impediment by conditioning a waiver of this right [to jury trial] on the consent of the prosecuting attorney and the trial judge[.]" *Id.* at 36, 85 S.Ct. at 790. Furthermore, as the Government notes, jury sentencing is seen as "desirable in capital cases 'in order to maintain a link between contemporary community values and the penal system[.]' " *Gregg,* 428 U.S. at 190, 96 S.Ct. at 2933 (quoting *Witherspoon v. Illinois,* 391 U.S. 510, 519 n. 15, 88 S.Ct. 1770, 1776 n. 15, 20 L.Ed.2d 776 (1968)). Mr. Spivey's argument is without merit.

### 4. Relaxed evidentiary standard

▆ Mr. Spivey argues that a relaxed evidentiary standard at the penalty trial, as mandated by § 848(j), is unconstitutional because death penalty trials require more, not fewer, procedural safeguards. He cites to several cases regarding the heightened protections which must be afforded in capital cases, including *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 2991–92, 49 L.Ed.2d 944 (1976); *Lowenfield v. Phelps,* 484 U.S. 231, 238–39, 108 S.Ct. 546, 551–52, 98 L.Ed.2d 568 (1988); and *Gardner v. Florida,* 430 U.S. 349, 357–60, 97 S.Ct. 1197, 1204–06, 51 L.Ed.2d 393 (1977) (plurality opinion).

The cases cited by Mr. Spivey discuss the fact that death is far more drastic than any other potential penalty, and "[b]ecause of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case." *Woodson,* 428 U.S. at 305, 96 S.Ct. at 2991. However, those cases also make it clear that the means for ensuring greater reliability is in controlling the sentencer's discretion and in requiring consideration of individual circumstances attending the accused and the crime. None of these cases stands for the proposition that due process standards at sentencing must be the equivalent of due process standards at the guilt/innocence phase. To the contrary, several Supreme Court cases have rejected Mr. Spivey's argument.

For example, in *Gregg,* the court stated:
So long as the evidence introduced and the arguments made at the presentence hearing do not prejudice a defendant, it is preferable not to impose restrictions. We think it desirable for the jury to have as much information before it as possible when it makes the sentencing decision.
428 U.S. at 203–04, 96 S.Ct. at 2939. Here, § 848(j) specifically permits the court to exclude information from the penalty hearing if its probative value is outweighed by the danger of unfair prejudice. As part of its evaluation, the court will undoubtedly consider the reliability of any proffered information. *See United States v. Pretlow,* 779 F.Supp. 758, 771 (D.N.J.1991). In the final analysis, however, "in capital cases, the fundamental respect for humanity underlying the Eighth Amendment ... requires consideration of the character and record of the individual offender and the circumstances of the particular offense as a constitutionally indispensable part of the process of inflicting the penalty of death." *Woodson,* 428 U.S. at 304, 96 S.Ct. at 2991. In this Court's view, § 848

strikes an acceptable balance between the competing interests of reliability and individualized sentencing.

### 5. Statutory aggravating factors

#### a. Section 848(n)(1) factors are overbroad and/or duplicative

Mr. Spivey generally challenges the constitutionality of the aggravating factors in § 848(n)(1) as overbroad and duplicative elements of the capital offense. The Court is not persuaded by either argument.

█ Mr. Spivey first argues that the factors are overbroad because they impermissibly fail to narrow the class of persons eligible for the death penalty. He contends that the statutory scheme can result in the death penalty being imposed for something less than murder, because the threshold conduct for imposition of capital punishment under § 848(e) is the lesser standard of intentional killing or intentional conduct resulting in death.

Mr. Spivey cannot point to any authority holding that murder is the least acceptable threshold for imposition of capital punishment. The most the Supreme Court has said in this regard is that the death penalty may not be imposed on one who has not himself killed, attempted to kill, or intended that killing take place or that lethal force be used. *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). The aggravating factors of § 848(n)(1) comply with this requirement. Section 848 states that the sentencing jury cannot consider imposing the death penalty unless it has first found one (n)(1) aggravating factor and one aggravating factor under (n)(2)—(12). The (n)(1) factors are:

> the defendant (A) intentionally killed the victim; (B) intentionally inflicted serious bodily injury which resulted in the death of the victim; (C) intentionally engaged in conduct intending that the victim be killed or that lethal force be employed against the victim, which resulted in the death of the victim; (D) intentionally engaged in conduct which—(i) the defendant knew would create a grave risk of death to a person, other than one of the participants

in the offense; and (ii) resulted in the death of the victim.

Each of these factors withstands scrutiny under *Enmund*'s holding. *See also Lowenfield,* 484 U.S. at 246, 108 S.Ct. at 555 (approving an aggravator similar to § 848(n)(1)(B)); *Tison v. Arizona,* 481 U.S. 137, 158, 107 S.Ct. 1676, 1688, 95 L.Ed.2d 127 (1987) (approving an aggravator similar to § 848(n)(1)(D)).

In addition, the Tenth Circuit held in *United States v. McCullah* that § 848 performs the requisite narrowing function, stating, "Congress has statutorily narrowed the field of death eligible defendants by limiting the possibility of capital punishment to homicides in furtherance of continuing criminal enterprises or other specified offenses." 76 F.3d 1087, 1109 (10th Cir.1996), *petition for cert. filed* (U.S. Nov. 22, 1996) (No. 96–6841). Furthermore, the Supreme Court has held that the narrowing function may be performed "by jury findings at either the sentencing phase of the trial or the guilt phase." *Lowenfield,* 484 U.S. at 245, 108 S.Ct. at 554.

Thus, because the definition of the offense circumscribes the class of death eligible defendants, further narrowing by the (n)(1) factors is unnecessary. However, in practical effect, a jury's finding of any aggravating factors does serve to narrow the class of death eligible defendants. In other words, of all defendants convicted of intentionally killing or causing death while engaging in a CCE, only those who meet an additional criterion specified at (n)(2)-(12), such as those who have previously been convicted of specific serious crimes, are truly subject to capital punishment. Unless the jury unanimously finds beyond a reasonable doubt the existence of both an (n)(1) factor and an (n)(2)-(12) factor, the jury cannot recommend the death penalty.

█ This Court also rejects Mr. Spivey's second challenge to the (n)(1) aggravating factors. Mr. Spivey contends that these factors duplicate elements of the capital offense. Although the Court acknowledges that the (n)(1) factors mirror the elements of the substantive offense as set forth in § 848(e)(1)(A), this fact does not compel invalidation of the (n)(1) factors. Because the required narrow-

ing function is performed at the guilt phase upon conviction under § 848(e)(1)(A), a duplicative (n)(1) factor is of no constitutional import. *See Lowenfield,* 484 U.S. at 244–45, 108 S.Ct. at 554–55; *McCullah,* 76 F.3d at 1109–10.

### b. Constitutionality of § 848(n)(7) and (8)

■ Mr. Spivey challenges as overbroad or vague the aggravating factors in § 848(n)(7) and (8). Section 848(n)(7) states: "The defendant committed the offense as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value." Mr. Spivey argues that this factor is overbroad and therefore fails to narrow the group of defendants potentially eligible for the death penalty because it covers all murders where a pecuniary benefit is derived, even if the pecuniary benefit did not motivate the murder.

The Court finds Mr. Spivey's argument to be without merit. The language of (n)(7) clearly contemplates a nexus between the pecuniary benefit and the killing. A killing committed "as consideration for" something of pecuniary value is certainly a killing motivated by pecuniary gain, as is a killing committed "in the expectation of the receipt of" something valuable. Consequently, (n)(7) satisfies the Supreme Court's test for specificity of aggravating factors. The factor has some "common sense core of meaning ... that criminal juries should be capable of understanding." *Tuilaepa v. California,* 512 U.S. 967, 973, 114 S.Ct. 2630, 2636, 129 L.Ed.2d 750, (1994) (quoting *Jurek v. Texas,* 428 U.S. 262, 279, 96 S.Ct. 2950, 2959, 49 L.Ed.2d 929 (1976) (White, J., concurring)).

■ Similarly, Mr. Spivey's challenge to (n)(8) is not persuasive. Section 848(n)(8) states: "The defendant committed the offense after substantial planning and premeditation." Mr. Spivey argues that virtually all first degree murders involve substantial planning and premeditation, and therefore, (n)(8) fails to narrow the class of death eligible defendants. While virtually all murders require some planning and premeditation, not all involve "substantial" planning and premeditation. As the court instructed the jury in *United States v. Tipton,* "substantial planning means planning that is considerable, or ample for the commission of a crime at issue in this case: murder." 90 F.3d 861, 896 (4th Cir.1996), *petition for cert. filed* (U.S. Jan. 27, 1997) (No. 96–7639).

Furthermore, the Supreme Court instructs us to be "quite deferential" in reviewing aggravating factors for vagueness. *Tuilaepa,* 512 U.S. at 972–73, 114 S.Ct. at 2635. The purpose of vagueness review in such circumstances is to "ensure that the process is neutral and principled so as to guard against bias or caprice in the sentencing decision." *Id.* Subsection (n)(8) performs this function by limiting the jury's consideration to a specific type of murder involving considerable or ample planning for its commission. The statutory language is not unconstitutionally vague. *See also McCullah,* 76 F.3d at 1110–11.

### 6. Non-statutory aggravating factors

### a. Separation of powers

■ Mr. Spivey argues that § 848 violates the doctrine of separation of powers by permitting the Government to define non-statutory aggravating factors. He claims that responsibility for defining criminal conduct and criminal punishment is an exclusively legislative function, and yet § 848 permits a United States Attorney to select who will be eligible for the death penalty by permitting the United States Attorney to define aggravators taken into account by the jury. This, Mr. Spivey contends, constitutes the improper delegation by Congress of its power to establish criminal punishment.

The Court is not persuaded. The provision of § 848 allowing the prosecution to give notice of non-statutory aggravating factors is not a delegation of congressional power. Even if it is a delegation of power, it is an appropriate and proper delegation.

The court in *United States v. Pitera* persuasively concluded that the provisions of § 848 regarding non-statutory aggravating factors permit the prosecution to "engage[ ] in advocacy, not legislation," 795 F.Supp. 546, 560 (E.D.N.Y.), *aff'd,* 986 F.2d 499 (2nd Cir.

1992), and, therefore, delegation is not an issue. First, the court noted that the narrowing function constitutionally mandated in any death penalty scheme

> has been achieved by Congress in limiting the types of homicides for which the death penalty may be imposed and in requiring proof of certain statutory aggravating factors. The prosecution's role is limited to that phase of the proceeding wherein the jury makes an individualized sentencing determination as to the defendant on trial.

*Id.* Thus, in citing and arguing non-statutory aggravating factors, the Government is assisting the jury in formulating an individualized sentence. In so doing, the Government "exercises discretion derived from the executive's enforcement powers, not from any delegated legislative powers." *Id.* at 561. Second, the Supreme Court has made it clear that in death penalty litigation, "it [is] desirable for the jury to have as much information before it as possible when it makes the sentencing decision." *Gregg,* 428 U.S. at 203–04, 96 S.Ct. at 2939. Thus, other aggravating circumstances, in addition to those set forth in the statute, should be presented to the sentencing jury to ensure that the sentence is in fact individualized.

Even if the statute's provision permitting the prosecution to select non-statutory aggravating factors translates into a delegation of legislative power, the delegation is appropriate and permissible. *McCullah,* 76 F.3d at 1107. Sentencing has traditionally been a function shared by all branches of the government. *Id.* at 1106. Congress establishes the sentence or range of sentences for a particular crime, the judiciary historically has the discretion to select the appropriate sentence from the range established by Congress, and the executive branch through its parole agencies enforces sentences or permits release from custody prior to the sentence's expiration. *Mistretta v. United States,* 488 U.S. 361, 364–65, 109 S.Ct. 647, 650–51, 102 L.Ed.2d 714 (1989). Congress may delegate its power to another branch, and "[s]o long as Congress 'shall lay down by legislative act an intelligible principle to which the person or body authorized to [exercise the delegated authority] is directed to

conform, such legislative action is not a forbidden delegation of legislative power.'" *Id.* at 372, 109 S.Ct. at 655 (quoting *J W. Hampton, Jr., & Co. v. United States,* 276 U.S. 394, 406, 48 S.Ct. 348, 352, 72 L.Ed. 624 (1928)).

The statutory framework of § 848 provides an "intelligible principle" by which the executive branch, through the prosecutor, acts. Congress recognized that different homicides would be associated with a variety of aggravating factors in addition to the those specified in § 848(n)(1)-(12), and that such factors should be considered by the sentencing jury, providing the prosecution gives notice of the factors upon which it intends to rely. Moreover, non-statutory factors cannot be considered unless and until the jury has first found beyond a reasonable doubt the existence of both an (n)(1) aggravator *and* an aggravator from (n)(2)-(12). This requirement, in conjunction with the requirement of notice, constitutes sufficient congressional guidance to withstand constitutional scrutiny. *See McCullah,* 76 F.3d at 1106.

Mr. Spivey further argues that the weighing scheme in § 848 goes beyond acceptable congressional delegation of legislative authority. He asserts that even if the jury finds the existence of the two requisite statutory aggravators and further finds that the aggravators are outweighed by mitigating factors, the jury can still go on to find that non-statutory aggravators outweigh mitigating factors. Thus, he maintains that the prosecution, through its selection of non-statutory aggravating circumstances, can expand the class of death-eligible defendants beyond the limits contemplated by the statutory provisions themselves.

■ The Court is not persuaded. Under Mr. Spivey's view of § 848, the jury first weighs statutory aggravating factors against mitigating factors, and if mitigating factors outweigh aggravators, the jury performs a *second* weighing process and determines if non-statutory aggravators outweigh mitigating circumstances. This is an incorrect analysis of the statute. Section 848(c) makes it clear that there is only one weighing function performed by the jury in the sentencing process. If the jury finds the existence of two statutory aggravators (one each from (n)(1)

and (n)(2)-(12)), the jury may find that other non-statutory aggravating factors, for which notice has been given, exist. Then and only then, the jury weighs *all* aggravating factors against mitigating factors.

The statute places additional limits on the prosecution's use of non-statutory aggravating factors. The prosecution may introduce only those factors for which it has given notice. *See* § 848(j). The trial court may exclude information regarding any non-statutory aggravating factor if the information's prejudicial effect outweighs its probative value. *See id.* Moreover, Supreme Court jurisprudence restricts the scope and type of aggravating factors that may be introduced at any capital sentencing proceeding. *See United States v. Pretlow,* 779 F.Supp. at 767 (citing *Zant v. Stephens,* 462 U.S. 862, 879, 103 S.Ct. 2733, 2743-44, 77 L.Ed.2d 235 (1983)).

The statutory scheme is constitutional. The required narrowing of the class of death eligible defendants occurs upon a defendant's conviction for killing another as defined in § 848(e) and upon the jury's finding of two statutory aggravating factors. The finding of additional non-statutory factors and the subsequent weighing process constitute the required individualized consideration necessary in any death penalty scheme. *See McCullah,* 76 F.3d at 1106, 1109; *United States v. Walker,* 910 F.Supp. 837, 851 (N.D.N.Y.1995)

#### b. Proportionality review

■ Mr. Spivey next argues that § 848 is unconstitutional because it does not require proportionality review. He contends that because the statute permits the prosecution to define non-statutory aggravating factors, proportionality review is necessary as a check on the potentially arbitrary imposition of the death penalty.

As Mr. Spivey acknowledges, the Supreme Court held in *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984), that the Constitution does not require proportionality review in every capital case. Although the Court in *Pulley* intimated that there might be some death penalty schemes which, when viewed in their entirety, might not pass con-

stitutional muster without proportionality review, 465 U.S. at 51, 104 S.Ct. at 879-80, § 848 is not one of those suspect statutes.

In this Court's view, the appellate review provisions of § 848 adequately protect defendants from the risk of arbitrariness which might inhere in the jury's consideration of non-statutory aggravating factors. The statute provides:

> On review of the sentence, the court of appeals shall consider the record, the evidence submitted during the trial, the information submitted during the sentencing hearing, the procedures employed in the sentencing hearing, and the special findings returned under this section.... The court shall affirm the sentence if it determines that—(A) the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor; and (B) the information supports the special finding of the existence of every aggravating factor upon which the sentence was based, together with, or the failure to find, any mitigating factors as set forth or allowed in this section. In all other cases the court shall remand the case for reconsideration under this section.

21 U.S.C. § 848(q). Pursuant to this provision, the appellate court must fully review any and all aspects of a capital sentencing proceeding. As noted by the court in *Pitera,* review for any arbitrary factor "must perforce include errors of law that are not harmless, for such errors, particularly in the context of a weighing statute, may impermissibly tip the scales in favor of death." 795 F.Supp. at 567. In addition, the appellate court must review for sufficiency of the information in support of the jury's special findings, vagueness of aggravating factors, adequacy of the court's instructions, or any other aspect of the penalty hearing that may have resulted in arbitrary sentencing. Moreover, appellate review "could even include proportionality review in a case where the appellate court thought such was essential to ensuring that a capital sentence was not arbitrary." *Id.; see also Walker,* 910 F.Supp. at 851-52 (to same effect as *Pitera* ); *Pretlow,* 779 F.Supp. at 769 (same).

### c. Ex post facto laws

■ Mr. Spivey argues that § 848's provision for non-statutory aggravating factors violates the Constitution's proscription against *ex post facto* laws because the prosecution may select non-statutory aggravating factors after the crime is committed but before trial. Pursuant to the *ex post facto* clause, no legislation may criminalize conduct which was legal at the time the conduct was performed, increase the punishment for a crime after the crime was committed, or deprive any defendant of a legal defense that was available at the time the alleged crime was committed. *Collins v. Youngblood,* 497 U.S. 37,42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990) (citing *Calder v. Bull,* 3 Dall. 386, 390, 1 L.Ed. 648 (1798)). Here, § 848's provision for non-statutory aggravating factors does not perform any of the prohibited functions.

In the present case, the Government relies on two non-statutory aggravating factors: victim impact and future dangerousness. With respect to the latter, the Government makes reference to Mr. Spivey's criminal record, other acts and threats of violence and his low potential for rehabilitation. None of these circumstances are part of the capital crime of which Mr. Spivey may ultimately be convicted, and therefore, no previously legal conduct has been criminalized by the Government's reliance on those factors. Similarly, reliance on these aggravators does not increase the punishment to which Mr. Spivey may be subject. Capital punishment "is the maximum penalty, which a jury can recommend in the complete absence of any proof of non-statutory aggravating factors if it is satisfied that statutory aggravating factors outweigh any mitigating factors." *Pitera,* 795 F.Supp. at 563–64. Finally, reliance on non-statutory aggravators has no impact on the availability of any defense upon which Mr. Spivey might choose to rely.

In short, the use of non-statutory aggravating factors does not implicate the Constitution's *ex post facto* clause. Instead, non-statutory aggravators serve the important function of providing the sentencing judge or jury with all relevant information necessary to the determination of an individualized sentence. *See id.*

### d. Non-statutory factors thwart Congressional intent or they are vague or duplicative

Mr. Spivey argues that the non-statutory factors cited by the Government should be stricken because: (1) Congress intended to exclude them from consideration in a capital case under § 848; (2) they are so vague as to be unconstitutional; or (3) they do nothing more than duplicate the statutory factors. Mr. Spivey's arguments are unpersuasive.

■ Mr. Spivey first argues that, because Congress did not include future dangerousness as a statutory aggravating factor, it must have intended to exclude it from consideration as a non-statutory aggravator as well. This argument is illogical. Mr. Spivey is in effect saying that non-statutory aggravating factors can be considered only if they are first mentioned in the list of statutory aggravating factors. This belies Mr. Spivey's further contention, discussed below, that it is impermissible to have non-statutory aggravators that duplicate statutory factors. Moreover, if Congress intended that only statutory aggravating factors be considered, then it would not have permitted consideration of *any* non-statutory aggravators.

Mr. Spivey also asserts that Congress chose the statutory aggravators it did in order to focus the sentencer's attention on the defendant's criminal background, and that the "future dangerousness" non-statutory factor is, therefore, simply an expansion of the statutory factors. The Court disagrees. The Government's recitation of evidence supporting the future dangerousness factor specifies evidence of a pattern of past *violent* acts, not just the bare existence of past criminal conduct. Moreover, the Government relies on additional evidence not necessarily ascertainable from evidence of past criminal conduct—specific threats of violence, low rehabilitative potential, and lack of remorse. This additional evidence certainly adds to the information available to the jury, and it is "relevant to their deciding which convicted capital offenders should be sentenced to death and which should not." *United States*

*v. Davis*, 912 F.Supp. 938, 944 (E.D.La.1996). Thus, consideration of future dangerousness furthers the goal of any capital penalty proceeding—individualized sentencing.

■■■ Mr. Spivey further contends that the non-statutory factors are vague. However, the only "factors" he specifically discusses concern past violent acts and low rehabilitative potential. (Mem. P. & A. Supp. Def.'s Mot. Strike Non-statutory Aggravating Factors at 16.) The Court will therefore limit its discussion to these categories.

The Court first notes that neither of the categories is intended to be a "factor." The only non-statutory factors specified by the Government are victim impact and future dangerousness. The categories referring to past violent acts and low rehabilitative potential serve simply to classify evidence supporting the future dangerousness factor.

Mr. Spivey's only *specific* objection[3] to the violent acts category is that "it provides no limits to what might be considered a past violent acts [sic]." (*Id.*) The Notice itself refutes this contention. The Notice lists five acts of violence with specific dates, names of victims or intended victims, and descriptions of the acts themselves. (Sup. Not. Intent to Seek Death Penalty ¶ 7.) There is nothing in any way vague about the violent acts upon which the Government relies.

Equally misplaced is Mr. Spivey's argument regarding the vagueness of the "low rehabilitative potential" category. He contends that this category "fails to determine what constitutes 'rehabilitative potential.'" (Mem. P. & A. Supp. Def.'s Mot. Strike Non-statutory Aggravating Factors at 16.) The concept of potential for rehabilitation is commonly understood and utilized in criminal law. The criminal justice system regularly assesses a defendant's potential for rehabilitation, as, for example, when a court determines the appropriate sentence and when parole authorities consider a prisoner's application for parole. *Cf. Jurek*, 428 U.S. at 275, 96 S.Ct. at 2957–58 (rejecting on the basis of similar considerations defendant's argument

that a "future dangerousness" aggravating factor is vague). Furthermore, the Government's Notice provided specific details of the evidence supporting its claim that Mr. Spivey has little potential for rehabilitation. (Sup. Not. Intent to Seek Death Penalty ¶ 7.)

Although Mr. Spivey does not expressly argue that the future dangerousness factor itself is vague, if he intended to make such an argument the Court would reject it. The Supreme Court has held that future dangerousness as an aggravating factor in a capital case is not vague. *Id.* at 275–76, 96 S.Ct. at 2957–58.

■■■ Mr. Spivey's final attack on the non-statutory aggravating factors is that they duplicate an element of the offense or a statutory aggravating factor. He claims this duplication is unconstitutional because duplicative aggravators fail to perform the required narrowing of the class of defendants potentially subject to the death penalty.

Mr. Spivey does not explain *why* he believes the factors are duplicative. The Court does not view the non-statutory aggravating factors as being duplicative of the statutory factors. The Government's Notice lists the required (n)(1) factor (intentional killing, or intentional infliction of serious bodily harm resulting in death, or conduct intending death), and two factors under (n)(2)-(12)— killing as consideration for pecuniary benefit, and killing after substantial premeditation and planning. The non-statutory factors, victim impact and future dangerousness, do not appear to duplicate the statutory factors in any way.

Furthermore, the non-statutory factors do circumscribe the class of defendants potentially subject to capital punishment. For example, before the jury in this case may even consider non-statutory factors, it must first find two statutory factors: one concerning the defendant's *mens rea*, and one finding either that the defendant killed in anticipation of receiving something of pecuniary value or after substantial premeditation and

---

**3.** Mr. Spivey makes a generalized attack on all other non-statutory "factors" and cites to case law generally disapproving of vague non-statutory aggravators. Such a generalized attack is insufficient. The Court cannot assess the vagueness of any "factor" unless the factor is specifically discussed.

planning. Either of the latter factors narrows the overall class of death eligible defendants. If the two statutory factors are found, then the jury considers whether the impact of defendant's actions on his victim's families or the likelihood of his future dangerousness militate in favor of capital punishment. Both victim impact and future dangerousness serve to further reduce the field of eligible defendants. Mr. Spivey's argument is therefore without merit.

**IT IS, THEREFORE, ORDERED** that Defendant Spivey's Motion To Dismiss Notice of Intent to Seek the Death Penalty (Docket No. 969); Motion To Strike Statutory Aggravating Factors From Government's Notice of Intent to Seek the Death Penalty (Docket No. 966); and Motion To Strike Non-statutory Aggravating Factors From Notice of Intent To Seek the Death Penalty (Docket No. 965) are hereby **denied.**