UNITED STATES of America,

v.

Tommy EDELIN, Defendant.

No. CRIM 98–264 RCL.

United States District Court, District of Columbia.

March 9, 2001.

See, also, 134 F.Supp.2d 45.

62

Cary Clennon, Washington, DC, for Defendant Bostick.

Pleasant S. Brodnax, Washington, DC, for Defendant Tommy Edelin.

James W. Rudasill, Jr., Washington, DC, for Defendant Tommy Edelin.

Richard K. Gilbert, Washington, DC, for Defendant Johnson.

Christopher Davis, Washington, DC, for Defendant Earl Edelin.

Shawn Moore, Federal Public Defender for D.C., Washington, DC, for Defendant Marbury.

Jensen Barber, Washington, DC, for Defendant Mosley.

William M. Sullivan, Asst. U.S. Atty.'s, Stephen Pfleger, Paul Quander, Washington, DC, for the Government.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This comes before the Court upon defendant Tommy Edelin's Motions to Preclude the Death Penalty, to Dismiss the Government's Notice of Intent to Seek the Death Penalty, to Strike Aggravating Factors, to Request an Evidentiary Hearing on the Sufficiency of the Statutory and Non-statutory Aggravating Factors Alleged by the Government, to Strike the Notice of Intent to Seek the Death Penalty Because of Racial Discrimination in the Government's Capital Charging Practices, and for Discovery. Defendant Edelin argues that 21 U.S.C. § 848 is unconstitutional for a variety of reasons, and challenges the statute as applied to him. Defendant Edelin also challenges the structure of the capital sentencing proceedings he will face if he is found guilty of any of the three capital charges against him.

Defendant Edelin has filed numerous challenges to the constitutionality of 21 U.S.C. § 848, including ten Motions to preclude the death penalty on the basis of the unconstitutionality of the Anti–Drug Abuse and Death Penalty Act of 1988 [hereinafter ADAA], six motions challenging the application of the death penalty and the validity of the government's Notice of Intent to Seek the Death Penalty in this case, one Motion requesting an evidentiary hearing as to the sufficiency of the evidence to support the aggravating factors listed in the government's Notice of Intent to Seek the Death Penalty, and one Motion to Strike the Notice of Intent to Seek the Death Penalty Because of Racial Discrimination. After reviewing the defendant's Motions, the Oppositions of the government, and the decisions of other courts with regards to the constitutionality of 21 U.S.C. § 848, the defendant's Motions are hereby DENIED.

### I. Background

Defendant Tommy Edelin is charged in a one hundred and three count Superseding Indictment. He will be tried, beginning March 26, 2001, with five co-defendants. The defendants are charged with the following crimes: conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, fifty grams or more of cocaine base, and one kilogram or more of heroin; continuing criminal enterprise; conspiracy to participate in a racketeer influenced corrupt organization; first degree murder while armed; continuing criminal enterprise murder; assault with intent to murder while armed; assault with a dangerous weapon; use of a firearm; and possession of a firearm during a crime of violence, among other crimes.

Each of the six defendants in this case is charged with at least one count of capital murder, but the government is only seeking the death penalty against defendant Tommy Edelin. Defendant Edelin is charged with the intentional killing of three individuals while engaging in and

working in furtherance of a continuing criminal enterprise, in violation of Title 21, United States Code, Section 848(e). Defendant Edelin is also charged with counseling, commanding, inducing, procuring, and/or causing the murders of eleven other individuals, and fourteen assaults with intent to murder. These charges are in addition to five counts of solicitation of murder, one count of attempted murder, and four counts of assault with intent to murder.

On June 30, 2000, the Government filed a Notice of Intent to Seek the Death Penalty, in accordance with Section 848(h), and stated therein its intent to seek the death penalty if defendant Tommy Edelin is convicted on Counts Twelve, Fourteen, and/or Sixteen of the Superseding Indictment. The Government has also provided the defendant with a specific list of statutory and non-statutory aggravating factors it will seek to prove as the basis for the imposition of the death penalty.

## II. Defendant's Motion to Preclude the Death Penalty: Constitutionality of the Anti–Drug Abuse Act

Defendant Edelin's challenges to 21 U.S.C. § 848 are substantially similar to challenges raised in this District by the defendant in *United States v. Cooper*, 91 F.Supp.2d 90 (D.D.C.2000). Although the defendant in *Cooper* was charged under the Federal Death Penalty Act, many of the statutory provisions, and the defendants' challenges to them, are identical. The Court finds that the defendant's arguments against the death penalty, although rooted in a sincere belief that the death penalty is cruel and unusual punishment, ignore the controlling authority of decisions by the United States Supreme Court. *See Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *United States v. Jones* 132 F.3d 232 (5th Cir.1998) (upholding constitutionality of death penalty and affirming death sentence imposed under sentencing procedures of Federal Death Penalty Act of 1994, 18 U.S.C. §§ 3591–98), *aff'd*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). Similarly, many of the defendant's arguments against the constitutionality of the provisions in the ADAA ignore the decisions of other courts whose decisions are based on well-reasoned analysis and legal precedent. *See United States v. Frank*, 8 F.Supp.2d 253, 260–61 (S.D.N.Y.1998) (collecting "growing body" of federal cases which have considered constitutional challenges to the two federal death penalty acts and have, "without exception," upheld their constitutionality).[1] This Court cannot ignore the decisions of the Supreme Court, nor will it ignore the compelling decisions of other courts upholding the constitutionality and

---

1. The two federal death penalty acts, the Federal Death Penalty Act of 1994 and the Anti–Drug Abuse Act of 1988, have similar provisions and procedures. Numerous federal courts have upheld the constitutionality of the death penalty under the Anti–Drug Abuse Act of 1988 against the same or similar challenges as those presented to this Court. *See United States v. Tipton*, 90 F.3d 861, 895–901 (4th Cir.1996), *cert. denied*, 520 U.S. 1253, 117 S.Ct. 2414, 138 L.Ed.2d 179 (1997); *United States v. Bradley*, 880 F.Supp. 271, 282–92 (M.D.Pa.1994); *United States v. Cooper*, 754 F.Supp. 617, 621–27 (N.D.Ill.1990) *aff'd*, 19 F.3d 1154 (7th Cir.1994); *United States v. DesAnges*, 921 F.Supp. 349, 353–60 (W.D.Va.1996); *United States v. Johnson*, 1997 WL 534163 (N.D.Ill.1997); *United States v. Pitera*, 795 F.Supp. 546, 552–70 (E.D.N.Y. 1992), *aff'd on other grounds*, 986 F.2d 499 (2d Cir.1992); *United States v. Spivey* 958 F.Supp. 1523, 1527–36 (D.N.M.1997); *United States v. Tidwell*, 1995 WL 764077 (E.D.Pa. 1995); *United States v. Walker*, 910 F.Supp. 837, 844–58 (N.D.N.Y.1995), *aff'd on other grounds*, 142 F.3d 103 (2d Cir.), *cert. denied*, 525 U.S. 896, 119 S.Ct. 220, 142 L.Ed.2d 181 (1998).

legitimacy of the ADAA and the capital sentencing procedures established by statute and case law.

The United States Supreme Court has recognized that the procedures for sentencing a person to death must be subject to "heightened standards of reliability" [2] and further established that "death is different" [3] from other penalties that can be imposed for criminal wrongdoing. Defendant Edelin argues that the safeguards implemented by various courts for procedures used during capital sentencing are not sufficient to ensure the constitutionality of the penalty. The Court finds that the safeguards established within the ADAA, combined with the procedures implemented by courts which have interpreted the ADAA, and viewed through the lens of Supreme Court jurisprudence, are sufficient to protect the constitutional rights of the defendant. The rights of the defendant must be protected when he faces the most serious of penalties, to ensure that the result of the sentencing be accurate and reliable; the proper application of 21 U.S.C. § 848 protects the constitutional rights of defendant Edelin.

The death penalty cannot be constitutionally applied in an arbitrary and capricious manner. *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). The discretion of the sentencing jury must be suitably "directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Zant v. Stephens,* 462 U.S. 862, 874, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983) (internal citations omitted). It is also crucial, however, that each defendant facing the death penalty be con-

sidered as an individual, and that he receive "particularized consideration of all relevant aspects" of his character before the death penalty is imposed on him. *Woodson v. North Carolina,* 428 U.S. 280, 303, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976), *Roberts v. Louisiana,* 428 U.S. 325, 96 S.Ct. 3001, 49 L.Ed.2d 974 (1976).

The statute under which defendant Tommy Edelin is charged, 21 U.S.C. § 848, balances the competing interests present in a death penalty case by applying the death penalty fairly and to a narrow class of individuals while also providing for individualized sentencing of the defendant. Defendant Edelin is eligible for the death penalty because he allegedly killed, procured, or caused the intentional killing of three different individuals, while engaged in or working in furtherance of a continuing criminal enterprise. The death penalty is being sought against him because he is death-eligible and because the Attorney General made a decision to seek the death penalty in his case. Defendant Edelin's rights are further protected by the additional safeguards within the ADAA that balance his interests against the interests of the government. The Court finds that the ADAA is constitutional.

### A) Narrowing of the Category of Persons Eligible for the Death Penalty

■ Defendant Edelin next argues that the ADAA is unconstitutional because it fails to narrow the class of persons to whom the death penalty applies. The statutory scheme of 21 U.S.C. § 848, however, specifically narrows the category of indi-

---

2. *Pulley v. Harris,* 465 U.S. 37, 55, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984) (Stephens, J. concurring).

3. *Woodson v. North Carolina,* 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) ("The penalty of death is qualitatively differ-

ent from a sentence of imprisonment, however long."); *Gardner v. Florida,* 430 U.S. 349, 357–58, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) ("[D]eath is a different kind of punishment from any other which may be imposed in this country.") (plurality opinion).

viduals who are eligible for the death penalty.[4] The statute uses successive steps to narrow the broad category of all murderers to those who have committed murder in the furtherance of a continuing criminal enterprise. The category is further narrowed to those murderers who killed with one of the intent factors listed in Section 848(n)(1). The intent element must be found beyond a reasonable doubt by the jury as an aggravating factor. The government must then convince the jury that at least one additional statutory aggravating factor, set forth in Sections 848(n)(2) through (n)(12), applies beyond a reasonable doubt. Unanimous findings by the jury of the two aggravating factors establishes the eligibility of the defendant to receive the death penalty.

Defendant Edelin argues that the aggravating factors discussed above fail to narrow the class of persons eligible for the death penalty from the entire category of persons convicted of crimes involving "intentional" killings. He is mistaken; 21 U.S.C. § 848 itself creates a threshold restriction on the class of persons eligible for the death penalty. Only those defendants who have engaged in a killing as described by Section 848(e) are eligible for the death penalty.[5] The legislature complied with the constitutional requirements of the Eighth Amendment by adding an intent element to the statute so that no defendant could be sentenced to death when he had not intended to kill. *See Tison v. Arizona,* 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987); *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). This intent requirement, however, is not the only portion of Section 848 that serves to narrow the category of persons who are death penalty eligible. The restrictions of the statute itself narrow the class, as does the requirement that the jury find at least one aggravating factor beyond the intent element. *See Lowenfield v. Phelps,* 484 U.S. 231, 246, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988); *Tuilaepa v. California,* 512 U.S. 967, 972, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). As the Fifth Circuit Court of Appeals found, the relevant analysis is to compare cases which qualify under these factors to "the larger class of all murders [including] felony murders for which the death sentence could not necessarily be imposed." *United States v. Flores,* 63 F.3d 1342, 1370–71 (5th Cir.1995) *cert. denied,* 519 U.S. 825, 117 S.Ct. 87, 136 L.Ed.2d 43 (1996) (*citing Lowenfield v. Phelps,* 484 U.S. 231, 241–42, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988)); *see also Arave v. Creech,* 507 U.S. 463, 475, 113 S.Ct. 1534, 123 L.Ed.2d 188 (1993).

Only once the jury determines that the defendant is eligible for the death penalty would the jury begin to consider the other

---

**4.** *See Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988) (narrowing could be accomplished in either of two ways: "The legislature may itself narrow the definition of capital offenses ... so that the jury finding of guilt responds to this concern," or "the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase.")

**5.** The relevant portion of Section 848(e) reads:
 (1) In addition to the other penalties set forth in this section—

(A) any person engaging in or working in furtherance of a continuing criminal enterprise, or any person engaging in an offense punishable under section 841(b)(1)(A) of this title or section 960(b)(1) of this title who intentionally kills or counsels, commands, induces, procures, or causes the intentional killing of an individual and such killing results, shall be sentenced to any term of imprisonment, which shall not be less than 20 years, and which may be up to life imprisonment, or may be sentenced to death ...
21 U.S.C. § 848(e)(1)(A).

statutory and non-statutory aggravating factors produced by the government and the mitigating factors produced by the defendant. Each of the aggravating factors must be found beyond a reasonable doubt by a unanimous jury for the jury to consider these factors in making its final determination. The mitigating factors presented by the defense need only be found by a preponderance of the information, and any member of the jury who finds the existence of a mitigating factor may consider that factor when making the final determination. 21 U.S.C. § 848(k). Finally, the jury must carefully weigh the aggravating and mitigating factors, in accordance with the instructions provided by this Court. The jury would then make a decision as to whether the defendant should be sentenced to death. Thus, the narrowing function served by the initial eligibility determination by the jury limits the application of the death penalty while the subsequent information submitted to the jury allows for the selection of the proper penalty.

### B) Weighing Statutes in Capital Sentencings

■ Defendant Edelin next challenges the provision of the ADAA that a death sentence may be imposed only if the jury finds that the statutory and non-statutory aggravating factors "sufficiently outweigh and all mitigating factors which may have been found, or ... if no mitigating factors have been found, that the aggravating factors alone are sufficient to justify a sentence of death." *See* 21 U.S.C. § 848(k). The Supreme Court has upheld the validity of weighing provisions in capital sen-

tencings. In *Buchanan v. Angelone,* the Court held that when a capital defendant is allowed to introduce all constitutionally relevant mitigating information at sentencing, the jury need not be instructed in the manner in which it should consider that mitigating information. 522 U.S. 269, 276–79, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998). Previously, in *Tuilaepa v. California,* 512 U.S. 967, 978–79, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994), the Court held that "[a] capital sentencer need not be instructed how to weigh any particular fact in the capital sentencing decision[.]" Nevertheless, if the defendant is concerned about the jurors' ability to follow the statute in weighing the different factors accepted at sentencing, he may propose a jury instruction to assist the jurors, and the Court will take it under consideration.[6]

### C) Order of Argument at Sentencing

■ The Court, in considering the defendant's argument that the order of argument provision included in Section 848(j) is unconstitutional, turns to the Federal Rules of Criminal Procedure. Rule 29.1 prescribes the order of argument at trial and reinforces the standard practice of federal litigation to give the party with the burden of proof the right to open and close argument. FED. R. CRIM. P. 29.1. Although the Supreme Court has recognized that death penalty proceedings are different than other kinds of proceedings, the defendant goes beyond the Supreme Court's capital case decisions to say that the order of argument provision is unconstitutional. There is no basis for the defendant's contention. The burden of proof

---

**6.** Several courts have found the following jury instruction appropriate: "the aggravating factors [must] sufficiently outweigh the mitigating factors[.]" *See United States v. Chandler,* 996 F.2d 1073, 1091 (11th Cir.), *reh'g en banc denied,* 5 F.3d 1501 (11th Cir.1993), *cert. de-*

*nied,* 512 U.S. 1227, 114 S.Ct. 2724, 129 L.Ed.2d 848 (1994); *United States v. Flores,* 63 F.3d 1342, 1376 (5th Cir.1995), *cert. denied,* 519 U.S. 825, 117 S.Ct. 87, 136 L.Ed.2d 43 (1996).

at sentencing remains squarely in the hands of the government, and therefore, the order of argument provision of the statute is valid. *See United States v. Cooper,* 91 F.Supp.2d 90, 101 (D.D.C.2000); *United States v. Cooper,* 754 F.Supp. 617, 627 n. 17 (N.D.Ill.1990).

### D) Standard of Admissibility of Information at Sentencing

■ The inclusion of all mitigating information, in compliance with the Supreme Court's decisions in *Buchanan v. Angelone,* 522 U.S. 269, 118 S.Ct. 757, 139 L.Ed.2d 702, (1998) and *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) would result in a very skewed presentation of information at sentencing if the government were not also allowed to provide relevant information with regard to aggravating factors. The balance struck by the authors of Section 848 thus results in a broad grant of discretion and responsibility to the trial judge. The trial judge must carefully weigh each piece of information to be presented at sentencing and exclude information "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." 21 U.S.C. § 848(j).

Defendant Edelin, after reviewing Section 848, concludes that the admission at sentencing of information that would not be admissible under the Federal Rules of Evidence invalidates the ADAA. By contrast, the federal courts who have re-viewed the standards for admission of information at capital sentencings have determined that the relaxed evidentiary standard is constitutional.[7]

The Supreme Court addressed a similar provision in Georgia's death penalty statute in *Gregg v. Georgia,* finding that the legislature had "wisely ... chosen not to impose unnecessary restrictions on the evidence that could be offered" because it was "desirable for the jury to have as much information as possible when it makes the sentencing decision." 428 U.S. 153, 203–04, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The Fifth Circuit, when addressing the ADAA, specifically found that the statute struck the proper balance between "heightened reliability" and "individualized sentencing." *United States v. Jones,* 132 F.3d 232, 241 (5th Cir.1998), *aff'd,* 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). The Court finds that the evidentiary standards of the ADAA properly protect the integrity of the capital sentencing process.

### E) Mitigating Information

■ The legislature, in drafting Section 848, recognized the defendant's right to provide all relevant mitigating information at sentencing.[8] 21 U.S.C. § 848 only restricts the defendant's ability to present mitigating information when the information presented is substantially more prejudicial than probative or may lead to juror confusion. *See* 21 U.S.C. § 848(j). This

---

7. *See, e.g., United States v. Cooper,* 91 F.Supp.2d 90, 97 (D.D.C.2000); *United States v. Walker,* 910 F.Supp. 837, 853 (N.D.N.Y. 1995); *United States v. Spivey,* 958 F.Supp. 1523, 1529–30 (D.N.M.1997); *United States v. DesAnges,* 921 F.Supp. 349, 355–56 (W.D.Va. 1996); *United States v. Bradley,* 880 F.Supp. 271, 290–91 (M.D.Pa.1994); *United States v. Pitera,* 795 F.Supp. 546, 564–65 (E.D.N.Y. 1992); *United States v. Pretlow,* 779 F.Supp. 758, 769–71 (D.N.J.1991).

8. *See Buchanan v. Angelone,* 522 U.S. 269, 276–77, 118 S.Ct. 757, 139 L.Ed.2d 702 (1998); *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) ("in all but the rarest kind of capital cases" a sentencing authority may not "be precluded from considering, as a mitigating factor, any aspect of a defendant's character or record ... as a basis for a sentence less than death").

same restriction applies to the information presented by the government at sentencing. *See id.* Defendant Edelin advances several arguments that the ADAA unconstitutionally restricts the introduction of mitigating information by the defendant. Upon a plain reading of the statute, including Section 848(m)(10), which allows the introduction of "[o]ther factors in the defendant's background, or character that mitigate against imposition of the death sentence," the Court finds that the ADAA does not unconstitutionally limit the presentation of mitigation information at sentencing. *See United States v. Cooper,* 91 F.Supp.2d 90, 100 (D.D.C.2000) (finding that a similar provision in the Federal Death Penalty Act does not exclude mitigating information).

The Court also rejects defendant's argument that the jury would reject mitigating factors that are not specifically listed in the statute. The jury is presumed to follow instructions of the court. *See Richardson v. Marsh,* 481 U.S. 200, 206, 107 S.Ct. 1702, 95 L.Ed.2d 176 (1987). If the defendant is concerned that the jurors will be confused as to the relevance of mitigating factors, he may propose appropriate corrective jury instructions and the Court will take them under consideration.

## F) *Inadmissibility of Race as a Mitigating Factor*

█ Defendant Edelin asserts the unconstitutionality of the ADAA because Section 848(*o*) precludes the jury from considering the "race, color, religious beliefs, nation origin, or sex of the defendant or of any victim" as a mitigating factor. The defendant argues that this prevents him from presenting all mitigating information at sentencing, as is required by the Supreme Court's decisions in *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978) and *Buchanan v. An-*

*gelone,* 522 U.S. 269, 118 S.Ct. 757, 139 L.Ed.2d 702, (1998). While the Supreme Court has held that the defendant cannot be denied the opportunity to present mitigating information at sentencing, the exclusion of race as a mitigating factor does not violate the holding of *Lockett,* 438 U.S. at 604, 98 S.Ct. 2954. Federal courts have established that while race, gender, and religious background should not be considered by the sentencing jury,

> the *effects* and *experiences* of race may be admissible. If a defendant can show that his life has been marked by discrimination or some other set of experiences, irrespective of whether they result, in part, from his race, then that properly might be admissible as relevant mitigating background or character evidence. But this is a far cry from using race in and of itself as a proxy for a set of beliefs and experiences. Pigmentation does not define a person's character or background; the life that a person has led and the things that he has experienced do.

*United States v. Webster,* 162 F.3d 308, 356–57 (5th Cir.1998), *cert. denied,* 528 U.S. 829, 120 S.Ct. 83, 145 L.Ed.2d 70 (1999). *See United States v. Cooper,* 91 F.Supp.2d 90, 101 (D.D.C.2000). The Court finds that defendant Edelin's objection to Section 848(*o*) is unfounded, the restriction on his ability to present race as a mitigating circumstance does not violate his constitutional rights.

## G) *ADAA's Appellate Review Procedures*

█ Under the Anti–Drug Abuse Act, appellate review is granted upon the application of the defendant. 21 U.S.C. § 848(q). The reviewing court is permitted to grant relief from a death sentence if the death sentence was "imposed under the influence of passion, prejudice, or any other arbitrary factor," there is insufficient

evidence to support the required aggravating factor, or there is some legal error in the proceedings that requires reversal of the sentence. *Id.* Defendant Edelin argues that this "limited" appellate review is not "meaningful" [9] and invalidates the statute. The Court disagrees.

The Supreme Court has not found that automatic appellate review is required in death penalty cases, nor has the Supreme Court held that the appellate review provided in 21 U.S.C. § 848 or similar statutes is inadequate. The defendant is concerned that the lack of automatic appellate review "takes fatal advantage of a condemned person at the height of his vulnerability" by requiring the defendant to file a notice of appeal. *See Defendant's Motion* at 25. The act of filing notice is not an onerous burden. Defendant Edelin has three defense counsel, provided pursuant to 18 U.S.C. § 3005, 21 U.S.C. § 848(q)(4)-(8), and the clerk of the court is required to file the notice upon the defendant's request. *See* FED. R. CRIM. P. 32(c)(5). The defendant will not be without resources,

his counsel can ensure an appeal is filed, should an appeal be needed.

A review of the plain words of the ADAA, in conjunction with an understanding of one of the most common rules of statutory construction,[10] yields the conclusion that appellate review under the ADAA is meaningful in the constitutional sense. While the defendant argues that the statutory language is too restrictive of the appellate court's powers, the words of the statute indicate that the appellate court maintains the ability to review the sentencing decision if it is imposed under any "arbitrary factor," a lack of evidence supporting the mandatory aggravating factor, or any other legal error properly preserved for appeal. *See* 21 U.S.C. § 848(q).

The defendant also reads the ADAA to unconstitutionally foreclose plain error review by appellate courts. Contrary to the position of the defendant, however, there is "no basis for thinking that [a] court of appeals will be limited in its power to fully review any sentence imposed." *United States v. Pitera*, 795 F.Supp. 546, 567 (E.D.N.Y.1992).[11] The Court finds that

**9.** "We have emphasized repeatedly the crucial role of meaningful appellate review in ensuring that the death penalty is not imposed arbitrarily or irrationally . . ." *Parker v. Dugger*, 498 U.S. 308, 320, 111 S.Ct. 731, 112 L.Ed.2d 812 (1991).

**10.** As Justice Holmes once said: "A statute must be construed, if fairly possible, so as to avoid not only the conclusion that it is unconstitutional but also grave doubts upon that score." *United States v. Jin Fuey Moy*, 241 U.S. 394, 401, 36 S.Ct. 658, 60 L.Ed. 1061 (1916) (citing *United States ex rel. Attorney General v. Delaware & Hudson Co.*, 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909)). *See Almendarez–Torres v. United States*, 523 U.S. 224, 237, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). "This canon is followed out of respect for Congress, which we assume legislates in the light of constitutional limitations." *Rust v. Sullivan* 500 U.S. 173, 191, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991). Additionally,

the Supreme Court has established that it will not " 'anticipate a question of constitutional law in advance of the necessity of deciding it.' " *See Ashwander v. TVA*, 297 U.S. 288, 346, 56 S.Ct. 466, 80 L.Ed. 688 (1936) (Brandeis, J., concurring), quoting *Liverpool, N Y & P S S Co. v. Commissioners of Emigration*, 113 U.S. 33, 39, 5 S.Ct. 352, 28 L.Ed. 899 (1885). Just as the Supreme Court avoids conflict with the legislative branch, this Court will not "decide questions of a constitutional nature unless absolutely necessary to a decision of the case." *Burton v. United States*, 196 U.S. 283, 295, 25 S.Ct. 243, 49 L.Ed. 482 (1905).

**11.** While the defendant fears that a plain error might not be preserved for review under the ADAA, Rule 52(b) of the Federal Rules of Criminal Procedure applies equally to unpreserved plain error that affect the defendant's substantial rights in capital proceedings under either the Federal Death Penalty Act or the Anti–Drug Abuse Act. *See Jones v. United*

the provisions of 21 U.S.C. § 848, in accordance with the United States Constitution and the applicable rules of criminal procedure, do not unconstitutionally curtail appellate review of death sentences.

Defendant Edelin identifies another flaw he considers fatal in the ADAA's appellate review provisions in the lack of a provision for proportionality review. Although the Supreme Court has relied on proportionality review as an added feature to protect the rights of capital defendants, it has never held that proportionality review is constitutionally required. *Pulley v. Harris*, 465 U.S. 37, 50, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). The Supreme Court explained in *Pulley* that *Zant v. Stephens*[12] had established that "[p]roportionality review was considered to be an additional safeguard against arbitrarily imposed death sentences, but . . . comparative review was [not] constitutionally required." *Pulley*, 465 U.S. at 50, 104 S.Ct. 871.

The death penalty statute at issue here does not provide for proportionality review, although other courts have held that the statute does not bar appellate courts from conducting proportionality review and examining the penalties imposed in similar cases. *See* 21 U.S.C. § 848; *United States v. Cooper*, 91 F.Supp.2d 90, 99 (D.D.C.2000). The defendant's argument that the ADAA is unconstitutional, because of a lack of a proportionality review provision, is unpersuasive against the words of the Supreme Court and the decisions of other federal courts.[13]

Defendant Edelin next argues that the ADAA's remand provision, included in Section 848(q)(3), could be applied in violation of the Double Jeopardy Clause of the Fifth Amendment, and therefore invalidates the entire ADAA. The defendant ignores several canons of statutory instruction in coming to this conclusion.[14] Although the statute could be applied in an unconstitutional manner,[15] the statute allows for compliance with its terms in a constitutional manner. *See United States v. Cooper*, 91 F.Supp.2d 90, 99 (D.D.C.2000). The Court will not assume that the Circuit Court of Appeals will decide in a manner inconsistent with the Constitution, particularly where the statute does not compel such a decision. Defendant Edelin's double jeopardy challenge to the remand provisions of the ADAA is rejected.

## III. The Anti–Drug Abuse Act as Applied to Defendant Edelin

### A) Validity of Notice of Intent to Seek the Death Penalty

Defendant Edelin argues that the Notice of Intent to Seek the Death Penalty is insufficient to enable him to prepare for the capital sentencing proceedings that will occur if he is found guilty of one or more of the three capital charges against

---

States, 527 U.S. 373, 388, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).

12. 462 U.S. 862, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

13. *See United States v. Cooper*, 91 F.Supp.2d 90, 99 (D.D.C.2000); *United States v. Bradley* 880 F.Supp. 271, 284 (M.D.Pa.1994); *United States v. Pretlow*, 779 F.Supp. 758, 763 n. 2 (D.N.J.1991); *United States v. Cooper*, 754 F.Supp. 617, 626 (N.D.Ill.1990); *aff'd*, 19 F.3d 1154 (7th Cir.1994).

14. "[A]n act of Congress ought not to be construed to violate the Constitution if any other possible construction remains available." *Rust v. Sullivan*, 500 U.S. 173, 190, 111 S.Ct. 1759, 114 L.Ed.2d 233 (1991) (citations omitted). *See also supra* note 10.

15. *See Poland v. Arizona*, 476 U.S. 147, 152–53, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986) (finding double jeopardy is implicated on remand only where the reviewing court finds that the government has "failed to prove its case" for the death penalty).

72

him. This Court has already held that the Notice of Intent to Seek the Death Penalty meets the applicable constitutional and statutory requirements for Notice. *See United States v. Edelin,* Order of January 23, 2001, 2001 WL 65580, \*16 (D.D.C.).

The Notice filed by the government enumerates the aggravating factors that apply to each of the three capital counts charged in the Superseding Indictment. The Notice includes the specific intent elements which are applicable to each count, the applicable statutory aggravating factors, and the non-statutory aggravating factors which the government intends to prove at sentencing. The Notice filed by the government is in compliance with the requirements of 21 U.S.C. § 848(h), as previously held by this Court. *See United States v. Edelin,* Order of January 23, 2001, 2001 WL 65580, \*16 (D.D.C.). The Notice is therefore not deficient. Defendant's Motion to Dismiss the Government's Notice of Intent to Seek the Death Penalty is hereby DENIED.

### B) Validity of the Non-statutory Aggravating Factors Noticed by the Government

■ Defendant Edelin contends that the use of non-statutory aggravating factors at sentencing violates the Eighth Amendment. He argues that the use of non-statutory aggravating factors does not limit and guide the discretion of the sentencing jury as is required by the Constitution. The Supreme Court, however, has found that if the jury first finds at least one statutory aggravating factor which narrows the class of defendants who are eligible for the death penalty, the Constitution does allow consideration of non-statutory aggravating factors at sentencing where those factors are "relevant to the character of the defendant or the circumstances of the crime," *Barclay v. Florida,* 463 U.S.

939, 967, 103 S.Ct. 3418, 77 L.Ed.2d 1134 (1983) (Stevens, J., concurring). *See also Zant v. Stephens,* 462 U.S. 862, 878–79, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983).

Under the Anti–Drug Abuse Act, non-statutory aggravating factors only come into play after two threshold statutory aggravating factors have been proved beyond a reasonable doubt. *See supra* Section II(A). The court in *United States v. Bradley* found that non-statutory aggravating factors need not narrow the class of defendants eligible for the death penalty, but instead should serve to "assist the jury in making an individualized determination whether the defendant should be executed." *United States v. Bradley,* 880 F.Supp. 271, 285 (M.D.Pa.1994).

Aggravating factors provide for individualized sentencing. This is true of statutory and non-statutory aggravating factors alike. The use of non-statutory aggravating factors under the ADAA is "virtually the same" as the role of sentencing information in non-capital cases. *United States v. Pitera,* 795 F.Supp. 546, 562 (E.D.N.Y. 1992); *United States v. Cooper,* 754 F.Supp. 617, 626 (N.D.Ill.1990), *aff'd* 19 F.3d 1154 (7th Cir.1994). The government does not have unbridled discretion to use non-statutory aggravating factors under the ADAA. The statute restricts the use of information if "its probative value is substantially outweighed by the danger of creating unfair prejudice, confusing the issues, or misleading the jury." 21 U.S.C. § 848(j). Non-statutory aggravating factors must also survive the "heightened reliability" standard applicable in capital sentencings. *United States v. Bradley,* 880 F.Supp. 271, 285 (M.D.Pa.1994).

Other restrictions on the use of non-statutory aggravating factors include that the aggravators may not be vague, ambiguous or overbroad. *Tuilaepa v. California,* 512 U.S. 967, 972, 114 S.Ct. 2630, 129

L.Ed.2d 750 (1994). There must also be sufficient evidence to support each of the aggravating factors presented at sentencing. 21 U.S.C. § 848(q). Furthermore, the aggravating factors used must be included in the government's notice of intent to seek the death penalty, filed pursuant to 21 U.S.C. § 848(h), and each aggravating factor must be proven beyond a reasonable doubt. 21 U.S.C. § 848(j). Although defendant Edelin argues that non-statutory aggravating factors are unconstitutional, the Court finds that they are valid. The non-statutory factors presented in the government's Notice are not vague or over-broad. *See Tuilaepa v. California,* 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994); *United States v. Cooper,* 91 F.Supp.2d 90 (D.D.C.2000). Nor are the non-statutory factors noticed by the government facially invalid under Section 848(j). Each of the non-statutory aggravating factors and the information the government intends to present in support of each factor will be evaluated by the court when the government makes its proffer of information at the start of jury deliberations at the guilt phase of trial. *See Court's Order of February 8, 2001,* at 59.

Defendant Edelin further argues that Congress intended to prevent the use of unadjudicated criminal conduct as a non-statutory aggravating factor and therefore included adjudicated criminal conduct in the list of statutory aggravating factors.[16] 21 U.S.C. § 848(n)(2)-(4), 848(n)(10). This argument has previously been rejected by other courts. *See United States v. Cooper,* 91 F.Supp.2d 90, 106 (D.D.C.2000); *see also United States v. Frank,* 8 F.Supp.2d 253, 279–80 (S.D.N.Y.1998) (holding that statutory aggravating factors do not constitute an exhaustive list of factors which may be submitted regarding a defendant's

past criminal behavior); *U.S. v. Spivey,* 958 F.Supp. 1523, 1534 (D.N.M.1997) (rejecting defendant's contention that, because Congress did not include further dangerousness as a statutory aggravating factor, it must have intended to exclude it as a non-statutory factor as well). The Court finds that if Congress had intended that only statutory aggravating factors be considered, it would not have allowed consideration of any non-statutory aggravators. *See Spivey* 958 F.Supp. at 1534.

The statute clearly allows for the use of non-statutory aggravating factors once they have been properly identified in the government's Notice of Intent to Seek the Death Penalty. *See* 21 U.S.C. § 848(h). The government has properly included non-statutory aggravating factors in its Notice of Intent to Seek the Death Penalty. The validity of those non-statutory aggravating factors cannot be challenged simply on the grounds that they are non-statutory rather than statutory aggravating factors. The Court finds that the use of non-statutory aggravating factors does not violate defendant Edelin's constitutional rights.

*1) Delegation of Authority to the Executive*

■ Defendant Edelin argues that the use of non-statutory aggravating factors is the result of an unconstitutional delegation by the legislative branch to the executive branch. The Supreme Court has recognized that "the sentencing function long has been a peculiarly shared responsibility among the Branches of government and has never been thought of as the exclusive constitutional province of any one Branch." *Mistretta v. United States,* 488 U.S. 361, 390, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Unless expressly prohibited, federal courts

---

**16.** 21 U.S.C. § 848(n)(2)-(4), 848(n)(10). The Court further addresses Defendant Edelin's

challenges to the use of unadjudicated criminal activity *infra* Section III(D).

have traditionally permitted the government to introduce "any and all information which might reasonably bear on the proper sentence for the particular defendant, given the crime committed." *Wasman v. United States*, 468 U.S. 559, 563, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984).

The limited delegation of the legislature's sentencing power in the ADAA has been held to be constitutionally permissible by a variety of federal courts. *See, e.g., United States v. McCullah*, 76 F.3d 1087, 1106–07 (10th Cir.1996), *cert. denied*, 520 U.S. 1213, 117 S.Ct. 1699, 137 L.Ed.2d 825 (1997); *United States v. Tipton*, 90 F.3d 861, 895 (4th Cir.1996), *cert. denied*, 520 U.S. 1253, 117 S.Ct. 2414, 138 L.Ed.2d 179 (1997). *See also United States v. Jones* 132 F.3d 232, 239–40 (5th Cir.), *aff'd*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) (arising under the Federal Death Penalty Act of 1994). These courts have found that the ADAA and the Federal Death Penalty Act of 1994 prescribe "intelligible principles" to which the prosecutor must conform. The analysis established by the Fifth Circuit with regard to the Federal Death Penalty Act of 1994 is equally applicable to the Anti–Drug Abuse Act:

> At least four limitations guide the prosecution in exercising its delegated authority. First, the statute limits the scope of aggravating factors to those for which prior notice has been given by the prosecution. Second, the death penalty jurisprudence devised by the Supreme Court guides the prosecution in formulating non-statutory aggravating factors.... Third, the district court functions as a gatekeeper to limit the admission of useless and impermissibly prejudicial information. And fourth, the requirement that the jury find at least one statutory aggravating factor beyond a reasonable doubt before it may consider the non-statutory factors further limits the dele-

gated authority. The requirement of at least one statutory aggravating factor secures sufficient Congressional guidance in classifying death-eligible offenders.

*Jones*, 132 F.3d at 239–40, *aff'd*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) (footnote and citations omitted. The provisions of the ADAA similarly protect the constitutional rights of the defendant. The ·delegation of legislative authority to the prosecutor is not unconstitutional in the context of the ADAA's use of non-statutory aggravating factors.

### *2) Ex Post Facto Concerns*

■ Defendant Edelin argues that the use of non-statutory aggravating factors which include conduct other than the crimes charged in the indictment, such as other criminal activity, including weapons possession, narcotics trafficking, and acts undertaken to obstruct justice, violates the ex post facto clause of the Constitution. He states that at the time that the conduct was allegedly committed, he would not have had any reason to believe it could "warrant criminal sanctions such as the death penalty." *Defendant's Motion* at 31.

This argument has been made before numerous other courts and rejected. This Court finds no reason to deviate from the reasoning established in previous decisions. *See, e.g., United States v. Cooper*, 91 F.Supp.2d 90, 106 n. 11 (D.D.C.2000); *United States v. Glover*, 43 F.Supp.2d 1217, 1230 (D.Kan.1999); *United States v. Frank*, 8 F.Supp.2d at 267; *United States v. Nguyen*, 928 F.Supp. 1525, 1537–38 (D.Kan.1996); *United States v. Bradley*, 880 F.Supp. at 284; *United States v. DesAnges*, 921 F.Supp. at 354–55; *United States v. Spivey*, 958 F.Supp. 1523, 1534 (D.N.M.1997); *United States v. Pitera*, 795 F.Supp. at 563–64. The use of non-statutory aggravating factors during a capital

sentencing proceeding does not violate the ex post facto clause of the Constitution, the defendant's challenge fails.

### C) Defendant's Request for an Evidentiary Hearing

■ Defendant Edelin's Motion for an Evidentiary Hearing on the Sufficiency of the Statutory and Non-statutory Aggravating Factors Alleged by the Government is DENIED. While defendant Edelin claims that he is unable to adequately prepare for capital sentencing proceedings because he has a limited amount of information available to him, the government indicates that extensive discovery has been provided to the defendant. The Court has previously ruled that the defendant is not entitled to further pre-trial discovery. *See United States v. Edelin,* Order of January 23, 2001, 2001 WL 65580 (D.D.C.). The ruling of this Court in its prior Order was based on the representations of the government of the discovery provided to the defendant, and on the Court's finding of dangerousness of the defendant and his willingness to interfere with the judicial process. *Id.* The Defendant has not shown that the Court's previous findings were erroneous.

Defendant Edelin argues that he is entitled to a pretrial hearing on the sufficiency of the evidence as to each of the non-statutory aggravators noticed in the government's Notice of Intent to Seek the Death Penalty. The Court finds that he is not entitled to a pretrial adjudication as to the sufficiency of the evidence he would face at sentencing.

The Court has ordered the government to make a proffer of the information it will produce at the time of sentencing. *See Court's Order of February 8, 2001,* at 59. This pre-verdict notice to the Court and the defendant will allow the Court to effectively operate in its capacity as a gatekeeper for questionable information. The Court will closely adhere to the statutory provisions of the ADAA that allow for the exclusion of information whose probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading of the jury. *See* 21 U.S.C. § 848(j). The government's proffer of information will also allow the defendant to prepare for sentencing, to the extent that the proffer includes information of which he was not previously aware.

In addition to the proffer the government will be required to provide at the start of jury deliberations at the guilt phase, the defendant has other sources of information available to him. The government indicates that the defense has been informed of the evidentiary support for each paragraph of the Notice of Intent to Seek the Death Penalty, both through discovery and discussion. *See Government's Omnibus Opposition* at 74. Moreover, almost all of the information to be introduced at sentencing will have previously been introduced during the guilt phase of the trial. Therefore, it should be clear that the defendant will have ample evidence and information at his disposal for the preparation for his capital sentencing, should he be found guilty of one or more of the capital counts.

Based on the extensive discovery already provided by the government, the government's Notice of Intent to Seek the Death Penalty regarding aggravators to be presented at sentencing, information discussed among counsel that will be used to support the statutory and non-statutory aggravating factors, and the Court ordered pre-verdict government proffer of information, an evidentiary hearing is unnecessary. Defendant Edelin will have sufficient evidence to prepare to rebut the statutory and non-statutory aggravators the government intends to raise at sen-

tencing. Defendant Edelin's Motion for an Evidentiary Hearing is hereby DENIED.

### D) Unadjudicated Criminal Activity

■ The government's Notice of Intent to Seek the Death Penalty includes unadjudicated criminal activity as aggravators to be used at sentencing.[17] Defendant Edelin argues that unadjudicated criminal activity should not be admissible during the sentencing proceeding because it would be extremely prejudicial and not proved beyond a reasonable doubt before an unbiased jury. He fears that the use of unadjudicated criminal activity as aggravating factors could open the door to factors that the government cannot prove beyond a reasonable doubt. While unadjudicated criminal activity may not be valid when used as aggravating factors, the use of unadjudicated criminal activity as information to support a finding of other aggravating factors is valid.[18]

The Supreme Court has indicated that unadjudicated criminal conduct is admissible during the penalty phase of a capital trial in several opinions. In *Williams v. People of State of New York*, 337 U.S. 241, 244, 251–52, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949), the Court held that it was constitutionally permissible for a sentencing judge to consider evidence of unadjudicated burglaries in sentencing the defendant to death. *See also Nichols v. United States*, 511 U.S. 738, 747, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) (reaffirming the Court's upholding consideration at sentencing of "a defendant's past criminal behavior, even if no conviction resulted from that behavior").[19] Furthermore, other

---

17. The unadjudicated criminal activity identified in the government's Notice is comprised of crimes charged in this case against defendant Edelin. Thus, at the time of sentencing, this criminal activity will no longer be unadjudicated. The Court may reconsider the use of criminal activity as aggravating factors after the jury reaches a verdict in the guilt phase of trial and when the Court reviews the government's proffer of information, required pursuant to the Court's Order of February 8, 2001.

18. While Section 848(j) requires that each aggravating factor be proved beyond a reasonable doubt to a unanimous jury, each piece of evidence used to support the aggravating factor need not be proved beyond a reasonable doubt. *See Huddleston v. United States*, 485 U.S. 681, 682, 691–92, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988) (evidence of other crimes under FED. R. EVID. 404(B) may be admitted for consideration by the jury without a preliminary finding by the court and need be proved only by a preponderance of the evidence). Other federal courts have found that unadjudicated criminal conduct was admissible at sentencing even if not proved to a beyond a reasonable doubt standard. *See United States v. Mir*, 919 F.2d 940, 943 (5th Cir.1990) (any unadjudicated conduct considered in determining sentence must be supported by a preponderance of the evidence (citing *McMillan v. Pennsylvania*, 477 U.S. 79, 91, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986)); *United States v. Beckford*, 964 F.Supp. 993, 996–97 (E.D.Va.1997) (rejecting contention that the individual unadjudicated acts of prior violence would have to be found, by the court initially and the jury at the penalty phase, to have been proved by "clear and convincing evidence"). *See also Breard v. Netherland*, 949 F.Supp. 1255, 1267 (E.D.Va. 1996) ("trial court did not err in refusing to instruct the jury [at penalty phase] that all alleged prior offenses must be proved beyond a reasonable doubt"), *aff'd*, 134 F.3d 615 (4th Cir.), *cert. denied*, 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998); *Turner v. Johnson*, 106 F.3d 1178, 1188–89 (5th Cir. 1997) (unadjudicated offenses need not be proved beyond a reasonable doubt at capital penalty phase) (citing *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)).

19. *See also Hatch v. Oklahoma*, 58 F.3d 1447, 1465 (10th Cir.1995) (citing *Williams* and *Nichols* and concluding that the admission of evidence of unadjudicated offenses at a capital sentencing proceeding does not violate due process), *cert. denied*, 517 U.S. 1235, 116 S.Ct. 1881, 135 L.Ed.2d 176 (1996); *accord*, *Devier v. Zant*, 3 F.3d 1445, 1464–65 (11th Cir.1993), *cert. denied*, 513 U.S. 1161, 115

federal courts have held that the use of unadjudicated criminal activity is constitutionally permissible in a capital sentencing proceeding. *See, e.g., United States v. Cooper,* 91 F.Supp.2d 90, 106 (D.D.C.); *United States v. Beckford,* 964 F.Supp. 993, 1001–02 (E.D.Va.1997). *Accord, United States v. Hall,* 152 F.3d 381, 403–04 (5th Cir.1998), (*cert. denied,* 526 U.S. 1117, 119 S.Ct. 1767, 143 L.Ed.2d 797 (1999); *United States v. Cuff,* 38 F.Supp.2d 282, 288 (S.D.N.Y.1999); *United States v. Kaczynski,* 1997 WL 716487.

 Evidence that supports the allegations that the defendant has engaged in obstruction of justice by threatening witnesses related to this case is relevant to the defendant's sentencing. The use of that evidence to support non-statutory aggravating factors at sentencing is constitutionally permissible. *See United States v. Beckford,* 964 F.Supp. at 1000; *United States v. Davis,* 912 F.Supp. 938, 948 (E.D.La.1996); *United States v. Pitera,* 795 F.Supp. 546, 564 (E.D.N.Y.1992). The weight that this evidence should be accorded is a decision that should be left to the sentencing jury. This type of information, once deemed reliable by the trial judge, allows for individualized sentencing. Contrary to Defendant Edelin's claims, the heightened reliability standard does not require the exclusion of information that may be prejudicial to him.[20]

### E) Use of Crimes Charged in the Indictment as Aggravators

 As a corollary to the defendant's challenge to the use of unadjudicated criminal activity as information to support aggravating factors, the defendant also challenges the use of crimes charged in the indictment as non-statutory aggravating factors. The defendant argues that the use of crimes charged in the indictment as non-statutory aggravating factors would bias the sentencing process against him because the jury must find the existence of a non-statutory aggravator as a consequence of finding him guilty of any of the alleged racketeering acts. *Defendant's Motion* at 66–67.

The Supreme Court explained in *Lowenfield v. Phelps* that information duplicating an element of the capital offense of conviction does not invalidate a Notice of Intent to Seek the Death Penalty when it "genuinely narrow[s] the class of death-eligible persons and thereby channel[s] the jury's discretion.... at either the sentencing phase of the trial or the guilt phase." 484 U.S. 231, 244–45, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). The fact that an aggravating circumstance found at the sentencing phase duplicates elements of the crime found at the guilt phase of trial "does not make [a death] sentence constitutionally infirm." *Id.* at 246, 108 S.Ct. 546.

The same analysis applies to the use of non-statutory aggravating factors.[21] Fol-

---

S.Ct. 1125, 130 L.Ed.2d 1087 (1995); *Williams v. Lynaugh,* 814 F.2d 205, 208 (5th Cir.), *cert. denied,* 484 U.S. 935, 108 S.Ct. 311, 98 L.Ed.2d 270 (1987); *United States v. Bradley,* 880 F.Supp. 271, 286–87 (M.D.Pa.1994); *United States v. Pitera,* 795 F.Supp. 571, 577 (E.D.N.Y.1992).

20. "[H]eightened reliability does not require exclusion of reliable, relevant evidence simply because the information may prove detrimental to the defendant. To find otherwise would ignore the interest in ensuring the correct

sentence, which ultimately is the goal of the heightened reliability requirement." *United States v. Beckford,* 964 F.Supp. at 997–98 (collecting cases).

21. While the holding of *Lowenfield v. Phelps* applies to the use of statutory aggravating factors, the Supreme Court has recognized that non-statutory aggravators are not required to serve the same "narrowing" function that statutory aggravators serve. *See Jones v. United States,* 527 U.S. 373, 400–02, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999).

lowing the rationale of *Lowenfield v. Phelps*, and *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976), "federal courts of appeals have consistently held that a sentencing jury can consider an element of the capital offense as an aggravating circumstance even if it is duplicitous." *Deputy v. Taylor*, 19 F.3d 1485, 1502 (3d Cir.), *cert. denied*, 512 U.S. 1230, 114 S.Ct. 2730, 129 L.Ed.2d 853 (1994).[22] Furthermore, under the Anti–Drug Abuse Act, the Tenth Circuit Court of Appeals has held that the non-statutory aggravating factor "commission of offenses charged in indictment" was constitutional because the death eligibility provision of Section 848(e) sufficiently narrowed the class of defendants eligible for the death penalty. *See United States v. McCullah*, 76 F.3d 1087, 1107–08 (10th Cir.1996).

The Court finds that the use of crimes charged in the indictment as aggravating factors at sentencing is permissible. If the jury finds beyond a reasonable doubt that the defendant committed crimes listed in the indictment other than the capital count(s) for which he is to be sentenced, the jury shall be allowed to consider those crimes. *See United States v. Cooper*, 91 F.Supp.2d 90, 108 (D.D.C.2000); *United States v. Frank*, 8 F.Supp.2d 253, 276 (S.D.N.Y.1998). The Court concludes that proper instruction to the jury on this matter is preferable to allowing the jury to speculate during the sentencing proceeding how or whether it should consider other crimes for which it has already found defendant Edelin guilty beyond a reasonable doubt.

### F) Victim Impact Non-statutory Aggravating Factors

Defendant Edelin recognizes the relevant Supreme Court precedent in this case, but challenges the limits of victim impact evidence that may be presented during sentencing. The statutory provisions of the Federal Death Penalty Act of 1994, 18 U.S.C. § 3593(a)(2), allow for the introduction of properly noticed victim impact evidence. The government has indicated that it intends to offer victim impact evidence at sentencing, and delineates the information it intends to present. *See Government's Omnibus Opposition* at 56 n.20.

The Court does not find that the information the government seeks to introduce at sentencing would be unduly prejudicial to the defendant. The Supreme Court upheld the use of victim impact evidence at sentencing in *Payne v. Tennessee*, 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). The Supreme Court upheld victim impact aggravating factors more loosely drafted than those in this case in *Jones v. United States*, 527 U.S. 373, 378, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). Thus, the defendant's argument that the victim impact related aggravating factors are too vague is rejected.

Defendant Edelin argues that while victim impact evidence is admissible, it

**22.** Defendant Edelin's reliance on *United States v. McVeigh*, 944 F.Supp. 1478 (D.Colo. 1996) is misplaced. The court's decision in *McVeigh* was based on *Stringer v. Black*, 503 U.S. 222, 112 S.Ct. 1130, 117 L.Ed.2d 367 (1992), a case in which the Supreme Court focused on the vague and imprecise nature of aggravating factors. *Stringer*, at 228–29, 112 S.Ct. 1130. The Supreme Court decided in *Jones v. United States*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999) that previous Supreme Court decisions did not hold "that aggravating factors could be duplicative so as to render them constitutionally invalid .... What we have said is that the weighing process may be impermissibly skewed if the sentencing jury considers an invalid factor." *Jones*, at 397, 119 S.Ct. 2090. The aggravating factors challenged here by defendant Edelin are not so vague or imprecise to be considered "invalid."

should be limited by the Court to include only one adult family member for each victim, each of whom would provide written testimony to the Court for pre-screening, and to reduce the emotionality of the testimony, in addition to restricting each family member to their written testimony. The Supreme Court clearly indicated in *Payne v. Tennessee* that victim impact evidence need not be treated differently than other evidence at sentencing. 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). "Given that victim impact evidence is potentially relevant, nothing in the Eighth Amendment commands that States treat it differently than other kinds of relevant evidence." *Payne*, 501 U.S. at 831, 111 S.Ct. 2597.

There no indication that victim impact information must be limited beyond the limits placed on other kinds of information at sentencing, in order to protect the constitutional rights of the defendant. Furthermore, the government's Notice tracks the previously upheld language of 18 U.S.C. § 3593(a)(2). The Court will carefully consider the information to be presented at sentencing, and will use its traditional supervisory powers to ensure the exclusion of information that is substantially more prejudicial than probative. The restrictions on victim impact information requested by the defendant are unnecessary to protect his constitutional rights during sentencing.

### G) Defendant's Lack of Remorse

 Defendant Edelin argues that his alleged "lack of remorse" should not be used at sentencing on several grounds. First, he contends that the use of "lack of remorse" in support of an aggravating factor penalizes the exercise of his Fifth Amendment right to remain silent and his Sixth Amendment right to a trial.[23] The government responds that it does not intend to refer in any way to his refusal to admit his guilt for the charged offenses or his exercise of the Sixth Amendment right to proceed to trial. *See Government's Omnibus Opposition* at 60. The government argues that it will rely on affirmative evidence to show the defendant's lack of remorse.

Although the government will not use lack of remorse as a non-statutory aggravator in this case, the use of lack of remorse as a non-statutory aggravator has been upheld in other cases. The Supreme Court, in *Zant v. Stephens*, reinforced the legitimacy of lack of remorse as a non-statutory aggravating factor when it stated that any "lawful evidence which tends to show the motive of the defendant, his lack of remorse, his general moral character, and his predisposition to commit other crimes is admissible in aggravation." 462 U.S. 862, 885, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). *See United States v. Cooper*, 91 F.Supp.2d 90, 111 (D.D.C.2000).

The defendant argues that the "lack of remorse" should be stricken as information because it is ambiguous and duplicative of the future dangerousness non-statutory aggravating factor. The Court disagrees. Federal courts have specifically upheld the use of lack of remorse to support a finding of future dangerousness. *See United States v. Davis*, 912 F.Supp. 938, 946, 947–48 (E.D.La.1996); *United States v. Cooper*, 91 F.Supp.2d at 111. The court in *United States v. Walker*, 910 F.Supp. 837, 855 (N.D.N.Y.1995), held that a separate allegation of lack of remorse could not be presented as a "discrete non-statutory ag-

---

**23.** In the government's Notice of Intent to Seek the Death Penalty, lack of remorse is listed as one factor that will be used to support the aggravating factor of Future Dangerousness.

gravating factor ..." but left open the question of whether such an allegation could be presented as evidence of future dangerousness. The government has not even attempted to allege lack of remorse as a non-statutory aggravating factor. Defendant's challenge to the use of lack of remorse as information at sentencing fails.

### H) Defendant's Future Dangerousness

■ Defendant Edelin also argues against the non-statutory aggravating factor of future dangerousness by renewing his objection to non-statutory aggravating factors in general. The Court has already rejected this argument. *See supra*, Section III(B).

Defendant's argument against the use of future dangerousness as a non-statutory aggravating factor is well received by the Court in that he argues that the defense is entitled to make a showing that he will be incarcerated for life even if the jury decides against imposing the death penalty. The government agrees that in the absence of federal parole, the jury should be informed of a defendant's mandatory incarceration for life without parole should the death penalty not be imposed. *See Ramdass v. Angelone*, 530 U.S. 156, 120 S.Ct. 2113, 147 L.Ed.2d 125 (2000); *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994).

To the extent that the defendant argues that the government should be prohibited from introducing any evidence of future dangerousness, however, the Court disagrees. The Supreme Court's decision in *Zant v. Stephens*, indicates that a defendant's "predisposition to commit other crimes is admissible in aggravation." *Zant*, 462 U.S. 862, 885, 103 S.Ct. 2733, 77 L.Ed.2d 235 (1983). The government may present information to support a finding of future dangerousness as an aggravating factor. The defendant may then rebut the information presented by the government, allowing the jury to make the ultimate determination on whether the federal prison system will adequately limit his future dangerousness.

### IV. Statutory Aggravating Factor of Procurement by Payment

■ Defendant Edelin argues that the government's Notice of intent to use the aggravating factor of procurement by payment should be struck on the grounds that the statutory aggravating factor is "too expansive" and does not identify the payment or promise thereof as the "causal factor" in inducing the murder. *Defendant's Motion* at 65–66.[24]

The government's use of the statutory aggravating factor of procurement of the offense by payment has been properly noticed and is valid. A statutory aggravating factor is not unconstitutionally vague if it provides principled guidance to the sentencing jury. *See Maynard v. Cartwright*, 486 U.S. 356, 361–64, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988); *Godfrey v. Georgia*, 446 U.S. 420, 427–433, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980); *Gregg v. Georgia*, 428 U.S. 153, 201 & n. 54, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). A plain reading of Section 848(n)(6) shows that it is not un-

---

**24.** The government's Notice includes the following statutory aggravating factor, as applied to the murder of Maurice Doleman: "Procurement of Offense by Payment—The defendant procured commission of the offense by payment, or promise of payment, of anything of pecuniary value." Section 848(n)(6). The defendant argues, in turn, against the statutory aggravator of the commission of the offense "as consideration for the receipt, or in the expectation of the receipt, of anything of pecuniary value." Section 848(n)(7). The Court, after analyzing the statutory aggravating factor, and the arguments of the parties, determines that Section 848(n)(6) is constitutionally sound.

constitutionally vague. *See Jones v. United States*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999). The challenge to the statutory aggravating factor in terms of its alleged over breadth similarly fails. While procurement of the offense by payment applies in many capital murder cases, it does not apply to every capital murder case. Statutory aggravating factors that do not apply to all capital defendants prosecuted and narrow the class of death-eligible defendants are constitutional. *See Jones*, 527 U.S. 373, 119 S.Ct. 2090, 144 L.Ed.2d 370 (making the same point as to victim impact testimony). Finally, the language used in the government's Notice is virtually identical to language upheld by the Supreme Court in *Poland v. Arizona*, 476 U.S. 147, 149, 106 S.Ct. 1749, 90 L.Ed.2d 123 (1986). The Court finds that the statutory aggravator, 21 U.S.C. § 848(n)(6), is valid.

## V. Motion to Strike Notice of Intent to Seek the Death Penalty

█ The Defendant's Motion to Strike the Notice of Intent to Seek the Death

Penalty Because of Racial Discrimination in the Government's Capital Charging Practices in Violation of the Fifth and Eighth Amendments, and for Discovery, charges that the government's decision to seek the death penalty against defendant Edelin was based on impermissible factors, such as the race of the defendant and the race of his victims. Defendant Edelin requests additional discovery and an evidentiary hearing related to his charges of racial bias by the government.[25]

Defendant Edelin makes several arguments in support of his underlying contention that the government's decision to seek the death penalty against him was impermissibly based on racial discrimination. This "kitchen sink" approach to attacking the government's Intent to Seek the Death Penalty leads to arguments that do not form a cohesive challenge to the government's decision to charge defendant Edelin with a capital crime. The defense arguments also fail to coherently attack the government's decision to seek the death penalty in this case. The Court addresses each of the arguments in turn, and indi-

---

**25.** Defendant Edelin requests extensive information in his Motion for Discovery, including, but not limited to the following:

> [I]nformation pertaining to the prosecution's capital charging practices under 18 U.S.C. § 3591 and 21 U.S.C. § 848 .... All correspondence between the U.S. Attorney's Office and the Attorney General's Capital Case Review Committee regarding the decision to seek the death penalty against Mr. Edelin .... Captions and case numbers of all cases submitted to capital case review in the United States between January 1, 1994 and the present date, with a description of the offense(s) charged and the ultimate disposition of the case.... [and related to each of those cases, internal documents of the Department of Justice including five different forms, used in the death penalty selection process and identified in the Department of Justice Criminal Resource Manual]....All standards, policies, practices, or criteria employed by the

> Department of Justice to guard against the influence of racial, political, or other arbitrary or invidious factors in the selection of cases and defendants for capital prosecution ...
> Any correspondence from the Department of Justice to United States Attorneys and their staff between January 1, 1994 and the present regarding federal death penalty policies, procedures, and selection criteria, or requesting identification of cases for capital prosecution under federal law.... A list of all non-negligent homicide cases throughout the United States since January 1, 1994 know [sic] to the Justice Department or to the FBI in which one or more defendants was arrested and charged by state or federal law enforcement authorities, and in which the facts would have rendered the offenders eligible for the death penalty under 18 U.S.C. § 3591, 21 U.S.C. § 848, or 21 U.S.C. § 924(j)....

> *Defendant's Motion* at 10–13.

cates why the arguments do not support each other, nor a conclusion that the government's Notice of Intent to Seek the Death Penalty should be stricken in this case.

First, the defendant argues that the government's capital charging practices are in violation of the Fifth and Eighth Amendments to the Constitution because blacks are charged with federal capital crimes at a much higher rate than are whites. Second, the defendant argues that the Supreme Court's ruling in *McCleskey v. Kemp*, 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987), does not preclude the constitutional challenges raised in this case because the final decision-maker on whether to seek the death penalty in capital cases from 1995 to 2001 was the Attorney General of the United States, a single individual. Third, the defendant argues that his claim of racial discrimination rests not on his own race, but on the race of his fourteen victims, all of whom were black.[26] Fourth, defendant Edelin asserts that he is entitled to discovery because he has presented "some evidence" in statistical form, that the government's charging decisions for all federal capital cases were influenced by racial discrimination.[27]

The Court finds that the defendant's arguments are inconsistent with Supreme Court precedent and that the defendant has not met the threshold requirements for further discovery. Defendant's Motion is hereby DENIED.

### A) Analysis

The defendant fails to recognize in his Motion that the decision to charge a defendant with federal capital charges is not identical to the decision regarding whether the government will seek the death penalty against that defendant. The Court will address the defendant's arguments, however, as if they had been made against the different practices of the government, both in making charging decisions and in making a final determination as to whether to seek the death penalty.

Defendant's allegations of racial discrimination in the government's capital charging practices are facially troublesome, especially given the disparity between the numbers of black and white defendants charged with capital crimes. *See DOJ Report* at 9 (showing that from 1988 to 1994, 75 percent of 52 defendants charged with capital crimes were black, while only 13 percent were white; and that from 1995 to 2000, 48 percent of 682 defendants charged with capital crimes were black, while only 20 percent were white). While the statistics are initially troubling, the decision to charge a defendant with a federal capital crime is based on numerous factors. Prosecutorial discretion has been widely debated, decried, and litigated. The United States Supreme Court, however, has been staunch in its support to the use of prosecutorial discretion to curb crime in this country. *See McCleskey v. Kemp*, 481 U.S. 279, 296–97, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987); *United States v. Arm-*

**26.** The Supreme Court in *McCleskey v. Kemp* found that criminal defendants could, in some circumstances, challenge proceedings when a third person's race was implicated. 481 U.S. at 292 n. 8, 107 S.Ct. 1756.

**27.** Defendant Edelin requests discovery dating back to 1994, however, given the substantial changes made in 1995 to the government's review procedures related to whether

to seek the death penalty, and the limited relevance pre–1995 cases would have to Defendant Edelin's case, the Court addresses Defendant Edelin's requests for discovery with analysis of the requests for information from 1995–2000. The Court's analysis for post–1995 statistics would apply equally to the pre–1995 statistics filed by the defendant in support of his Motion.

*strong,* 517 U.S. at 467–68, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). The Supreme Court has written that prosecutorial discretion is a fundamental part of our criminal justice system and that it should not be infringed upon without "exceptionally clear proof" of abuse. *McCleskey,* 481 U.S. at 297, 107 S.Ct. 1756. The defendant, insofar as he seeks discovery of the prosecutor's decision to charge him with a federal crime rather than a crime under District of Columbia law, would impermissibly infringe on prosecutorial discretion.

The Supreme Court, in *McCleskey v. Kemp,* addressed a statistical study of the implementation of the death penalty in Georgia. 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). The Court assumed the validity of the study and its conclusions, and found that the racial disparities identified by the study could be attributable to a multitude of factors, and thus the statistics could not be used to prove a prima facie case of racial discrimination in Georgia's application of the death penalty. *Id.* at 297, 107 S.Ct. 1756.

The holding in *McCleskey,* in addition to dicta from the majority opinion, clearly preclude this Court from finding that a prima facie case of racial discrimination exists in the government's capital charging practices on the basis of the defendant's Motion. The *McCleskey* Court indicated that it was leery of the use of statistics to question decisions made by prosecutors.[28] The Court indicated that policy considerations supporting the broad discretion of prosecutors would weigh against "requiring prosecutors to defend their decisions to seek death penalties"[29] or, as in this case, "[r]equiring a prosecutor to rebut a study that analyzes the past conduct of scores of prosecutors ... [rather than rebutting] a contemporaneous challenge to his own acts." *McCleskey,* 481 U.S. at 296 n. 17, 107 S.Ct. 1756 (citing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

Although defendant Edelin argues that *McCleskey* is inapplicable in this situation because only one individual made the final decision as to whether to seek the death penalty against federal capital defendants, the defendant's Motion attacks the procedures used to determine what charges will be brought against a defendant, federal or state, capital or non-capital. His Motion does not directly attack the procedures used to determine whether the death penalty will be sought against a particular capital defendant. The argument that the Attorney General acts as a decision maker in capital cases nationwide applies only to the government's decision of whether to seek the death penalty. The Attorney General does not make capital charging decisions.

## B) *Decision Whether to Seek the Death Penalty*

The procedures used by the federal government in determining whether the death penalty should be sought against a particular defendant, in place since 1995, mandate that a capital defendant's case be reviewed by three different decision-makers in order to determine whether the government should seek the death penalty against that

---

28. "It is also questionable whether any consistent policy can be derived by studying the decisions of prosecutors. ... Since decisions whether to prosecute and what to charge necessarily are individualized and involve infinite factual variations, coordination among district attorney offices across a State would be relatively meaningless. Thus, any inference for statewide statistics to a prosecutorial "policy" is of doubtful relevance." *McCleskey,* 481 U.S. at 295 n. 15, 107 S.Ct. 1756.

29. *McCleskey,* 481 U.S. at 296, 107 S.Ct. 1756.

defendant. The United States Attorney for each district makes an initial decision to charge a defendant with a capital-eligible offense, before making a recommendation as to whether death should be sought and sending the case to the Attorney General's Capital Review Committee, ("Review Committee"). The Review Committee in turn makes an independent recommendation to the Attorney General as to whether the death penalty should be sought. The Attorney General then reviews the case and makes the final determination of whether the government will seek death against the defendant.[30]

In response to concerns that the death penalty was being sought disproportionately against minorities, the Department of Justice conducted a statistical analysis of the race of capital defendants, the race of their victims, geographical data and other information related to the government's determination of whether to seek the death penalty in capital cases. The statistical study was released on September 12, 2000, and provides a starting point for many of defendant Edelin's arguments. *See The Federal Death Penalty System: A Statistical Survey 1988–2000,* [hereinafter *DOJ Study* ].

The DOJ Study provides no information about the charging decisions made by different United States Attorneys' Offices, beyond a racial breakdown of defendants charged with capital crimes.[31] The DOJ Study instead focuses on the recommenda-

tions of each United States Attorney's Office on whether to seek the death penalty, the Review Committee's decision on whether to seek the death penalty, and the Attorney General's decision on the same issue.

Defendant Edelin disregards the statistical findings on the determinations made as to whether to seek the death penalty. The defendant instead points to the racial disparities in the composition of cases where capital charges are brought. The statistics in the DOJ Study go against a claim of racial discrimination against blacks. Instead, the statistics suggest that the government is much less likely to seek the death penalty against a black capital defendant than a white capital defendant. From January 1995 to July 2000, the 94 United States Attorneys, as a whole, recommended seeking the death penalty against 183 defendants charged with capital-eligible offenses. *DOJ Study* at 15. The racial breakdown was as follows: the United States Attorneys recommended seeking the death penalty against 36 percent of the white defendants, 25 percent of the black defendants, 20 percent of the Hispanic defendants, and 52 percent of the "other race" defendants. *See DOJ Study* at 10.

The decisions of the Review Committee were similar for capital eligible defendants, recommending that the death penalty be sought against 40 percent of the white

---

**30.** When former Attorney General Janet Reno was questioned at a press conference as to whether anyone in her office reviewed the cases with information about the race of the defendant, Ms. Reno replied that the only people in her office who were formally advised of that information were paralegals who compiled the information for the DOJ Study. *See Transcript of Press Conference With Attorney General Janet Reno and Deputy Attorney General Eric Holder; Topic: The Death Penalty,* 6 (September 12, 2000). She noted, how-

ever, that in cases where race was an issue in the case, such as race-based killings, she was advised of race information during the review process. *Id.*

**31.** From January of 1995 to July of 2000, the 94 United States Attorneys charged 682 with capital-eligible offenses. 20 percent of the defendant charged were white, 48 percent were black, 29 percent were Hispanic, and 4 percent were "other race". *DOJ Study* at 9.

defendants, 27 of the black defendants, 25 percent of the Hispanic defendants, and 50 percent of the "other race" defendants. *DOJ Study* at 10. Finally, over the same time period, the Attorney General authorized seeking the death penalty for capital defendants in the following proportions: 38 percent of the white defendants, 25 percent of the black defendants, 20 percent of the Hispanic defendants, and 46 percent of the "other race" defendants. *Id.* Although the Court is leery of reliance on these statistics for any purpose, Defendant Edelin's suggestion that he was prosecuted on the basis of his race is less plausible after considering these numbers.

An examination of the DOJ Study further indicates that the government is more likely to seek the death penalty in cases where the victim or victims were white, rather than black. *See id.* at T–68, T–168, T–245. This disparity is present at the level of the United States Attorney's Office, the Review Committee, and the Attorney General.[32] The DOJ Study also shows that the government decides to seek the death penalty in more cases which involve multiple victims than in cases with only one victim. *Id.* at 20–21, 25–26, 30–31. Again, this disparity is present at all three levels of decision making. *Id.*

### C) Use of Statistical Data to Show Racial Bias

The Court must be cautious in using statistics such as the DOJ Study to infer the rationale used by decision makers in cases like this one. The statistical sampling of defendants against whom death was ultimately sought by the government is relatively small, which could exaggerate

racial disparities. *Id.* at 9, T–57, T–58 (showing that the government only sought the death penalty in 159 cases from 1995–2000, and indicating the impact in victim-related statistics caused by the Oklahoma City Bombing and the African Embassy Bombings). Furthermore, the Supreme Court has already expressed concern about the use of statistics to show racial discrimination in selective prosecution claims. The Court wrote in *McCleskey v. Kemp* that:

> "Statistics at most may show only a likelihood that a particular factor entered into some decisions. There is, of course, some risk of racial prejudice influencing a jury's decision in a criminal case. There are similar risks that other kinds of prejudice will influence other criminal trials. The question 'is at what point that risk becomes constitutionally unacceptable[.]' McCleskey asks us to accept the likelihood allegedly shown by the Baldus study as the constitutional measure of an unacceptable risk of racial prejudice influencing capital sentencing decisions. This we decline to do."

*McCleskey*, 481 U.S. 279, 308–09, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (internal citations omitted). The type of statistics rejected by the Supreme Court in *McCleskey* are precisely the type of statistics defendant Edelin seeks to rely on here. Defendant Edelin argues that the racial disparities in the raw numbers of defendants charged with capital crimes should invalidate the government's Notice of Intent to Seek the Death Penalty in this case. Prosecutorial discretion in charging is seldom infringed upon by the courts, especially when there has been no showing of prosecutorial misconduct. *See McCleskey*

---

**32.** *See id.;* Defendant Edelin seems to imply that this statistic shows that the government decided to prosecute him because this would create some kind of racial parity in the statistics, as he is charged with multiple murders of black victims. Not only does defendant Edelin fail to specifically allege this in his Motion, he provides no evidence that this occurred in his case.

*v. Kemp,* 481 U.S. 279, 297, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987)("Because discretion is essential to the criminal justice process, we would demand exceptionally clear proof before we would infer that the discretion has been abused."); *United States v. Armstrong,* 517 U.S. at 467–68, 116 S.Ct. 1480 (1996). Other federal courts have expressed a lack of confidence in statistics as evidence of racial disparities in capital cases. *See United States v. Armstrong,* 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996), *United States v. Bin Laden,* at 260–63, *United States v. Cooper,* 91 F.Supp.2d 90, 115 (D.D.C.2000).

There are simply too many different variables not addressed in the DOJ Study. It would be foolhardy of this Court to allow one set of statistics to dictate the Court's actions.[33] The Court will not ignore the Supreme Court's decision in *McCleskey v. Kemp* and find that the statistics included in the DOJ Study are sufficient evidence to support the defendant's claim of racial discrimination in the government's capital charging practices.

The defendant argues that *McCleskey v. Kemp* does not preclude this Court from finding that the DOJ Study shows racial discrimination in capital charging practices because the United States Attorney General personally makes the final decision of whether to seek the death penalty against individual capital defendants. Obviously this rationale is flawed. Although the Attorney General makes the final decision as to whether the death penalty should be sought against a federal capital defendant, the Attorney General does not personally make the decisions as to whether an individual should be charged with a non-capital, capital, federal, or state crime.

The decision by a United States Attorney to pursue federal capital charges against a defendant, or to seek a lesser penalty, is inherent to the concept of prosecutorial discretion. United States Attorneys similarly have the discretion to forego federal prosecution in favor of allowing state prosecutors to pursue a conviction. The statistics that the Supreme Court analyzed in *McCleskey v. Kemp* were rejected because they included too many variables to conclude that they showed racial discrimination in the capital proceedings in the state of Georgia. Likewise, the statistics in the DOJ Study, particularly as they relate to capital charging practices, include a variety of variables that the DOJ Study does not even attempt to analyze.

The *McCleskey* Court emphasized the difficulties in concluding that discriminatory intent was behind statistical disparities in the criminal charging process, writing that the "unique nature of the [charging] decisions at issue in this case also counsels against adopting such an inference from the disparities indicated by the Baldus study." *McCleskey,* 481 U.S. at 295, 107 S.Ct. 1756. The statistics in the DOJ Study do not account for the myriad of variables that factor into the prosecutorial decision of whether to charge a defendant with a capital offense.

The Supreme Court has long held that prosecutorial discretion should not be infringed upon by the courts absent some showing that the discretion had been abused. In *McCleskey,* the Court explained:

> Our refusal to require that the prosecutor provide an explanation for his decisions in this case is completely consistent with this Court's longstanding precedents that hold that a prosecutor

---

**33.** The vast majority of death row prisoners nationwide are male. That statistic does not necessarily indicate that there is wide-spread gender bias in capital sentencings or in capital charging procedures.

need not explain his decisions unless the criminal defendant presents a prima facie case of unconstitutional conduct with respect to his case.

*Id.* at 296–97 n. 18, 107 S.Ct. 1756; *accord, United States v. Armstrong,* 517 U.S. at 467–68, 116 S.Ct. 1480 (similarly distinguishing *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)).

Prosecutorial discretion is assumed to be exercised in good faith. *Attorney General v. Irish People, Inc.,* 684 F.2d 928, 947 (D.C.Cir.1982), *cert. denied,* 459 U.S. 1172, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983); *see also McCleskey,* 481 U.S. at 313, 107 S.Ct. 1756 ("Where the discretion that is fundamental to our criminal process is involved, we decline to assume that what is unexplained is invidious."); *United States v. Eklund,* 733 F.2d 1287, 1290–91 (8th Cir. 1984) ("Without such a showing the criminal prosecution is presumed to have been undertaken in good faith and in a nondiscriminatory manner pursuant to a duty to bring violators to justice"), *cert. denied,* 471 U.S. 1003, 105 S.Ct. 1864, 85 L.Ed.2d 158 (1985)

### D) Standard for Establishing Impermissible Selective Prosecution

The Supreme Court, in *United States v. Armstrong,* clearly established the burden of proof on a criminal defendant who makes charges of abuse of prosecutorial discretion. A defendant's Equal Protection claim of impermissible selective prosecution requires proof of two elements: "[t]he claimant must show that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Armstrong,* 517 U.S. at 465, 116 S.Ct. 1480 (quoting *Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)). In order to "establish a discriminatory effect in a race case, the claimant must show that

similarly situated individuals of a different race were not prosecuted." *Armstrong,* 517 U.S. at 465, 116 S.Ct. 1480.

In order to obtain discovery on a claim of unconstitutional selective prosecution, a defendant must present "some evidence" of the elements required for relief on the merits of such claims: discriminatory effect and discriminatory purpose. *Armstrong,* 517 U.S. at 465, 116 S.Ct. 1480; *Webster,* 162 F.3d at 333–34. Absent a showing of discriminatory effect, by way of similarly situated individuals of a different race who were not prosecuted, the Supreme Court has indicated that a district court need not grant discovery on the selective prosecution claim. *Armstrong* at 468–71, 116 S.Ct. 1480. The foregoing standards also apply to defense motions for evidentiary hearings on selective prosecution claims. *See Wade v. United States,* 504 U.S. 181, 186, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992); *Webster,* 162 F.3d at 333–34.

Although defendant Edelin argues that the standard for discovery and for an evidentiary hearing is somehow lower than the standards indicated in *Armstrong,* the only federal court of appeals to hear such an argument has held that the standard for discovery is identical to the standards established in *Armstrong* and *McCleskey. Webster,* 162 F.3d at 335; *see also Armstrong,* 517 U.S. at 468, 116 S.Ct. 1480 ("The justifications for a rigorous standard for the elements of a selective-prosecution claim thus require a correspondingly rigorous standard for discovery in aid of such a claim"). A high standard is even more appropriate where, as here, the discovery requested would be extremely burdensome and invasive. *See supra* note 1.

Even if the Court were to determine that a lower threshold should apply for granting discovery and an evidentiary hearing, the defendant would still be re-

quired to provide some direct evidence of discriminatory purpose and discriminatory effect. *See Armstrong,* 517 U.S. at 468–71, 116 S.Ct. 1480; *Bin Laden,* at 261. Defendant Edelin does not meet this standard, having presented no evidence of discriminatory effect or discriminatory purpose.

Defendant Edelin does not even attempt to show that similarly situated individuals of a different race were not prosecuted for similar crimes. *See Armstrong,* 517 U.S. at 465, 116 S.Ct. 1480; *Bin Laden,* at 260. It may be difficult for the defendant to find an individual of another race who has allegedly committed multiple murders, three of them capital, in addition to multiple attempted murders and assaults with intent to murder, and yet had never been prosecuted. Given that there are relatively few individuals who meet those specifications, it might be impossible for defendant Edelin to show a similarly situated non-black individual who was not charged with a capital crime. Nevertheless, the legal standard established by the Supreme Court in *Armstrong* demands that the defendant provide some evidence of similarly situated individuals of another race who were not prosecuted in order to obtain discovery on a selective prosecution claim. *Armstrong,* 517 U.S. at 465, 116 S.Ct. 1480.

The Court has evaluated the arguments made by defendant Edelin and found that they do not show that the government should be compelled to provide further discovery to the defendant with regards to other cases. The Court has previously denied a Motion by defendant Edelin for Discovery of information related to the United States Attorney's and Attorney General's decisions to seek the death penalty in his case. *See United States v. Edelin,* Order of January 23, 2001, 2001

WL 65580, \*13–\*16 (D.D.C.). It would be groundless for the Court to hold that he is now entitled to the same kind of discovery with relation to every other capital case since 1995, including his own. *See Defendant's Motion* at 10–13.

The defendant has failed to provide any evidence of racial discrimination in his case; therefore he has not met the minimum requirements established by the Supreme Court in *Armstrong* for discovery. The statistics contained in the DOJ Study cut against defendant Edelin's argument that the government is seeking the death penalty against him because of his race. Although defendant Edelin argues that several comments by the former Attorney General and Deputy Attorney General show some sign of bias in the Department of Justice, both of those individuals stated that there was no evidence of any bias in the process of selecting cases where the death penalty should be sought. *See Transcript of Press Conference With Attorney General Janet Reno and Deputy Attorney General Eric Holder, Topic: The Death Penalty,* 9 (September 12, 2000). While further studies have been ordered to examine why the number of blacks *charged* with capital crimes in the federal system is disproportionate to the percentage of blacks in the general population,[34] there is currently no basis for ordering discovery of the materials defendant Edelin seeks.

Defendant Edelin fails to meet the requirements established by the Supreme Court for discovery in a selective prosecution case. He has not produced any evidence that he was prosecuted on the basis of his race, nor has he provided any evidence that he was selected for prosecution on the basis of the race of his alleged victims. More importantly, defendant Edelin has not shown that there is any similarly situated white defendant who was

---

**34.** *See id.*

not prosecuted. Defendant Edelin's challenge to the federal government's charging decision on the grounds of selective prosecution is not supported by the Attorney General's declining to seek the death penalty against some white capital defendants; the same decision was made with respect to a proportionately greater number of black defendants. *See DOJ Study* at 10–11.

Even if defendant Edelin had been able to provide some evidence to support a prima facie case of selective prosecution on the basis of race, and he were provided discovery related to his claim, the government has a totally-race neutral response to any prima facie case presented by defendant Edelin. The government has evidence, and the grand jury has found probable cause to show, that defendant Edelin has engaged in serious criminal offenses, including fourteen murders and engaging in and working in furtherance of a continuing criminal enterprise in violation of federal law. The government could easily provide a race-neutral explanation for its decision to charge defendant Edelin with a capital crime.

Additionally, even if discovery had proven appropriate in this case, the materials sought by defendant Edelin are largely privileged under the attorney client privilege, the work product doctrine, and the deliberative process privilege, as held by this Court in its order of January 23, 2001. *See United States v. Edelin,* 2001 WL 65580, \*13–\*16 (D.D.C.). *See also United States v. Fernandez,* 231 F.3d 1240, 1246–47 (9th Cir.2000) (establishing the privileged character of documents and information such as those sought by defendant Edelin). The defendant's Motion for Discovery is DENIED.

### E) Eighth Amendment Claim

■ The Court also finds that defendant Edelin fails to establish an Eighth Amendment violation by the government. In order to establish his Eighth Amendment claim, defendant Edelin must show some evidence of an express "invidious" intention underlying the imposition of the death penalty. *See McCleskey,* 481 U.S. at 313, 319, 107 S.Ct. 1756. The Court finds that such a showing would be appropriate for defendant Edelin's claim, for although the death penalty has not been imposed upon him, he is making a similar claim with regards to the capital charging and intent to seek the death penalty decisions in his case. Defendant Edelin provides no evidence of invidious intention, and, as stated above, he provides no evidence of "discriminatory purpose" or "discriminatory effect". Therefore, his Eighth Amendment claim fails as his Equal Protection claim fails.

Defendant Edelin's Motion to Strike the Notice of Intent to Seek the Death Penalty Because of Racial Discrimination in the Government's Capital Charging Practices in Violation of the Fifth and Eighth Amendments, and for Discovery is hereby DENIED.

### VI. Conclusion

Defendant Edelin has challenged numerous portions of the Anti–Drug Abuse Act, and the government's Notice of Intent to Seek the Death Penalty against him. His arguments, some of which are superficially appealing, lack substance. Other federal courts have found many of his claims without merit. This Court, after analyzing the defendant's Motions and the government's Oppositions thereto, DENIES the defendant's Motions.

SO ORDERED.